Hillsborough
No. 78-214

JOHN F. MCGRANAHAN

v.

VICTOR W. DAHAR

October 24, 1979

*Brown & Nixon*, of Manchester (*Stanley M. Brown* orally), for the plaintiff.

*McLane, Graf, Greene, Raulerson & Middleton P.A.*, of Manchester (*Jack B. Middleton* orally), for the defendant.

BROCK, J. This action for defamation and "malicious use of process" presents the question of how much protection from civil liability is afforded persons participating in judicial proceedings.

The defendant, Victor W. Dahar, is an attorney who owns real estate in the city of Manchester. The lessee of one of Dahar's properties, American Snacks, Inc., applied for and was granted a tax abatement for the property for 1973. Following its usual procedure, the city issued and sent the abatement check to Dahar, the record owner of the property. Early in 1975, American Snacks brought suit in the Hillsborough County Superior Court alleging that Dahar had wrongfully converted the tax abatement check which American Snacks claimed belonged to it. As part of his defense, Dahar made certain statements to his attorneys and filed pleadings alleging that the disputed money belonged to the city, not to American Snacks, because the tax abatement had been unlawfully granted. In

particular, Dahar implied that the plaintiff here, John F. McGranahan, then chairman of the Board of Assessors for the city of Manchester, had improperly granted a tax abatement to a property in which he held a financial interest. McGranahan was not a party to the civil action of *American Snacks, Inc. v. Dahar*. At about the same time, members of the Manchester Police Department and the city prosecutor talked with Dahar about his suspicions. On April 10, 1975, McGranahan was arrested and charged with official oppression, RSA 643:1. Dahar testified on behalf of the State at McGranahan's trial, which took place in June 1975 in the Manchester District Court. Reports of the trial appeared in the news media. McGranahan was acquitted on all counts.

McGranahan then brought this action against Dahar, pleading in a single count trespass, libel, slander, and "malicious use of process." On the defendant's motion, the Court (*Keller*, C.J.) ordered the plaintiff to file an amended declaration separating out the various causes of action. In response, the plaintiff filed a new writ containing three counts, each captioned as a separate cause of action, and each repeating verbatim the entire text of the original declaration. The defendant then moved to dismiss the entire suit, claiming that all of the statements and actions complained of were absolutely privileged and could not be the basis for an action for libel, slander, or malicious use of process. The Trial Court (*Flynn*, J.) denied the motion and reserved and transferred the defendant's exceptions. We reverse.

McGranahan alleges that the defendant made defamatory statements on a number of occasions leading up to and including McGranahan's criminal trial. The plaintiff's claims relate to the following:

1. Statements "to Jack B. Middleton and Christopher Marshall and to divers other individuals," made "for the ulterior purpose of creating a plausible defense to the suit by American Snacks";

2. Statements contained in pleadings filed in Hillsborough County Superior Court in conjunction with the American Snacks suit;

3. Statements to the Manchester city solicitor, city prosecutor, and a member of the Manchester police department, during their investigation of McGranahan's alleged criminal conduct;

4. Dahar's testimony during McGranahan's criminal trial;

5. Reports in the public press of Dahar's allegations.

The defendant asserts that all of these statements were absolutely privileged as statements made in the course of judicial proceedings, and that any defamation action based on them must be dismissed. In response, plaintiff contends that the privilege afforded to statements in the course of judicial proceedings is a conditional one, which is lost if the declarant acts maliciously or in bad faith.

Whether this action can be dismissed at this stage depends on the type of privilege involved. In the case of a *conditional* privilege, the question whether the defendant is entitled to claim the privilege is a question for the trier of fact. *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767 (1972). Therefore, the matter can rarely be disposed of on a motion to dismiss or for summary judgment. *Thomson v. Cash*, 119 N.H. 371, 402 A.2d 651 (1979). An *absolute* privilege, however, is tantamount to an immunity. It is not conditioned on the actor's good faith. Because an *absolute* privilege bars an injured party from recovering any recompense, it "must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression without inquiry into a defendant's motives." *Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972). Judicial proceedings constitute one such situation. W. PROSSER, TORTS § 114, at 777–78 (4th ed. 1971).

In the context of this case, determination of the scope of the privilege to be recognized requires a balancing of two important principles: the right of an individual to enjoy an unsullied reputation, and the public interest in free and full disclosure of facts pertinent to judicial proceedings. Discussions with attorneys and investigating officers, and even the filing of pleadings, frequently and necessarily occur at a time when the declarant may not have access to information verifying or disproving the statements. The purpose of a judicial proceeding is to test the truth or falsity of allegations of criminal or wrongful conduct. Many of the cases in our courts involve allegations of undesirable conduct by one or more citizens. We cannot envision that these allegations should become the basis for defamation actions each time the alleged wrongdoer prevails in the first action. Under such a rule, our judicial system would be seriously hampered by parties' fears that if they were unable to establish unequivocally the truth of their pleadings they would face the burden of an extended defamation action in addition to the proceeding in which the statements were made. Annot., 38 A.L.R.3d 272, 277 (1971).

On the other hand, pleadings, testimony, and other portions of judicial proceedings are public documents and events. *Thomson v.*

*Cash*, 117 N.H. 653, 377 A.2d 135 (1977); *Martineau v. Helgemoe*, 117 N.H. 841, 379 A.2d 1040 (1977); *see Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975). A person's reputation undoubtedly may be harmed as much by allegations contained in pleadings, or spoken from a witness stand, even if ultimately disproven, as by those proclaimed from a soapbox in the village square. There is no reason to protect one who uses the form of a judicial proceeding merely as a pretext for circulating defamatory material. *Cf. State v. Burnham*, 9 N.H. 34 (1837) (leaflet cast in the form of petition for removal of public officer).

Due to these competing interests, the general rule is that statements made in the course of judicial proceedings are absolutely privileged from civil actions, provided they are pertinent to the subject of the proceeding. *See e.g., Aborn v. Lipson*, 357 Mass. 71, 256 N.E.2d 442 (1979); *Matthis v. Kennedy*, 243 Minn. 219, 67 N.W.2d 413 (1954); *Developments in the Law: Defamation*, 69 HARV. L. REV. 875, 920 (1956). The requirement of pertinence eliminates protection for statements made needlessly and wholly in bad faith. *McLaughlin v. Cowley*, 127 Mass. 316, 319 (1879). The rule reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings. *Aborn v. Lipson*, 357 Mass. 71, 72, 256 N.E.2d 442, 443 (1970); *Martirano v. Frost*, 25 N.Y.2d 505, 508–09, 255 N.E.2d 693, 694–95, 307 N.Y.S.2d 425, 427–28 (1969). This rule does not assume that all persons who participate in judicial proceedings are free from malice. Rather, it reflects a determination that the need to protect honest participants from vexatious litigation to vindicate themselves is so important that the law will not risk subjecting them to defamation suits merely in order that the occasional malicious participant may be penalized in damages. Veeder, *Absolute Immunity in Defamation: Judicial Proceedings*, 9 COLUM. L. REV. 463, 469 (1909).

This court has previously indicated adoption of the general rule affording an absolute privilege or immunity to statements made in the course of judicial proceedings. In *Supry v. Bolduc*, 112 N.H. 274, 293 A.2d 767 (1972), we held that statements made during a zoning board hearing were not entitled to an absolute privilege because the hearing did not have all the hallmarks of a judicial proceeding. In *In re Grievance Procedures*, 115 N.H. 310, 312, 341 A.2d 272, 274 (1975), we approved extending "the absolute privilege given to statements in court" to statements made during attorney disciplinary proceedings. *Cf. Sweet v. Middlesex Mutual Insurance Co.*, 397 F. Supp. 1101 (D.N.H. 1975).

We next consider the specific statements that the plaintiff alleges were defamatory of him, to determine whether they are included in the absolute privilege.

I. *Statements to the defendant's attorneys*

■ It may be questioned whether all statements made to an attorney during the course of legal representation may be considered part of judicial proceedings and thus entitled to absolute privilege. We think, however, that an action in defamation based on statements made to an attorney representing the declarant must fail because the plaintiff is unable to establish an essential element of his case, namely, that the alleged statements were in fact made. There is little question on the facts presented that all the statments referred to in the plaintiff's writ would have occurred while the attorneys mentioned were representing Dahar in the civil action and advising him concerning the criminal charges against McGranahan. The alleged statements clearly fall into the category of communications made during the course of legal representation, which are confidential and permanently protected from disclosure. *See Riddle Spring Realty Co. v. State*, 107 N.H. 271, 273, 220 A.2d 751, 754 (1966).

■ The attorney-client privilege is considered an evidentiary one, not a matter of substantive law. *See* 8 J. WIGMORE, EVIDENCE §§ 2294–95 (McNaughton Rev. 1961). *But see Vogel v. Gruaz*, 110 U.S. 311 (1884). The plaintiff's allegations concerning these statements are incapable of proof, because neither the defendant nor his attorneys can be compelled to divulge the content of those conversations. *Stevens v. Thurston*, 112 N.H. 118, 289 A.2d 398 (1972).

■ The attorney-client privilege may not be absolute when there is a compelling need for the information and no alternative source is available. *Stevens v. Thurston*, 112 N.H. 118, 289 A.2d 398 (1972); Note, *The Attorney-Client Privilege: Fixed Rules, Balancing and Constitutional Entitlement*, 91 HARV. L. REV. 464 (1977). In the present case no such compelling need exists. The plaintiff is not seeking disclosure of evidence concerning criminal or tortious acts committed outside an attorney's office, which might fall within a recognized exception to the privilege. *See United States v. Nardi* (D.N.H. July 16, 1979); Note, *The Future Crime or Tort Exception to Communications Privileges*, 77 HARV. L. REV. 730 (1964). Instead, the plaintiff alleges that the communications themselves constitute a tort, for which he can recover damages without proof of actual harm. *See Thomson v. Cash*, 119 N.H. 371, 376, 402 A.2d 651, 654 (1979). Subjecting a client to liability, or indeed to the burden of defending against a

defamation action, for statements made to his attorney pertinent to and during the course of legal representation would seriously impair the full and frank discussions that the attorney-client privilege is designed to protect. *See Riddle Spring Realty Co. v. State*, 107 N.H. 271, 274, 220 A.2d 751, 755 (1966).

Affording a party to litigation or a witness absolute immunity for pleadings filed and statements made in court would come to little if they were to be subjected to potential liability for preliminary conversations with their attorney in which they have an opportunity to test their knowledge and the basis for their opinions. On balance, the plaintiff's desire for civil damages in defamation is not sufficiently compelling to warrant abrogation of the attorney-client privilege. *See Matter of Kozlov*, 79 N.J. 232, 398 A.2d 882 (1979).

There is little question here of pertinency. The plaintiff himself alleges that the statements were all made "for the ulterior purpose of creating a plausible defense to the suit by American Snacks." Whether the privilege in this instance exists cannot turn on the ultimate success of the defense propounded by the defendant with the advice of counsel. In order to further full and open disclosure and exploration between attorney and client, immunity must be afforded for all statements that bear on the subject matter of the legal representation. A client seeking legal advice cannot be expected to anticipate those facts that will ultimately give rise to a successful legal argument. We hold that the defendant's statements to his attorneys concerning the American Snacks suit are privileged and cannot be the basis for this action in defamation. RESTATEMENT (SECOND) OF TORTS § 587, Comment *b* (1977).

II. *Statements in civil pleadings*

The plaintiff seeks damages for libel for statements contained in several pleadings filed by Dahar in connection with the civil action by American Snacks, Inc. The pleadings before us reveal that only one, a petition for interpleader, contains the language complained of. In that document the defendant Dahar alleged the following:

> 4. By a document dated August 16, 1974, lessee, by its guarantor, subleased the premises to the Pewter Pub, Inc., a New Hampshire corporation, which sublease was signed on behalf of the sublessee by John F. McGranahan and Charles C. Karagianis;

> 5. By the terms of the sublease (Paragraph 32), the sublessee, Pewter Pub, Inc., agreed to pay all real estate taxes over the amount assessed in tax year 1973; the

sublessor, American Snacks, Inc., agreed to grant the Pewter Pub, Inc., credit as against the rent due from the Pewter Pub, Inc., for the amount of any decrease in real estate taxes below the amount assessed for the tax year 1973.

According to the plaintiff, the latter paragraph means "that the tax abatement for the tax year 1973 would benefit Pewter Pub, Inc.," and the two paragraphs taken together, along with the external fact that McGranahan was chairman of the board of tax assessors, constitute a charge "that plaintiff had engaged in official oppression, [was] a common cheat, a person of no honesty, integrity, worth or substance, secretly accepting illegal kickbacks of taxes, and unworthy of public or probate [sic] [private?] trust."

■ The first quoted paragraph is absolutely privileged because as the plaintiff concedes, it is a true and accurate statement concerning a public official. *Thomson v. Cash*, 119 N.H. 371, 377, 402 A.2d 651, 655 (1979), *citing Garrison v. Louisiana*, 379 U.S. 64, 74 (1974).

■ The question whether an absolute privilege exists with respect to the second paragraph turns on whether the pleaded allegations were pertinent or relevant to the civil action in which they were filed. The question of pertinence or relevance is one of law, which can properly be decided on the pleadings on a motion to dismiss. *O'Barr v. Feist*, 292 Ala. 440, 296 So. 2d 152 (1974); *Macie v. Clark Equipment Co.*, 8 Ill. App. 3d 613, 615, 290 N.E.2d 912, 913 (1972); 50 AM. JUR. 2d *Libel & Slander* §§ 236, 239 (1970). A statement is presumed relevant unless the person allegedly defamed demonstrates that it was "so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *Scott v. Statesville Plywood & Veneer Co., Inc.*, 240 N.C. 73, 76, 81 S.E.2d 146, 149 (1954); *Developments in the Law: Defamation*, 69 HARV. L. REV. 875, 923 (1956).

A party is permitted to plead any claim or defense, so long as it is not completely frivolous. *Sierra Madre Dev., Inc. v. Via Entrada Town Ass'n*, 20 Ariz. App. 550, 554, 514 P.2d 503, 507 (1973). "[T]he fact that a pleader may have difficulty in sustaining an allegation in a pleading does not make that allegation irrelevant to his case." *Spira v. Superior Court*, 62 Cal. App. 3d 33, 36, 133 Cal. Rptr. 24, 26 (1976).

All doubts are to be resolved in favor of pertinency or relevancy. *Dachowitz v. Kranis*, 401 N.Y.S.2d 844, 846, 61 App. Div. 2d 783 (1978); *O'Barr v. Feist*, 292 Ala. 440, 296 So.2d 152 (1974); *Macie v. Clark Equipment Co.*, 8 Ill. App. 3d 613, 616, 290 N.E.2d 912, 914

(1972). Using the foregoing test, we think the allegations in Dahar's pleadings were pertinent to the civil cases in which they were entered.

■ We agree with the plaintiff that the right and title of a third party, the so-called *jus tertii* defense, is not in and of itself a good defense to an action for conversion. *See* RESTATEMENT (SECOND) OF TORTS § 895(1) (1979). Dahar was, nevertheless, entitled to defend himself by challenging American Snacks' right to possession of the check and tax proceeds, a key element of its conversion case. In such a situation, it is appropriate for a party in defendant Dahar's position to deposit the disputed property in court and initiate interpleader. *Id.*, comment *g*; W. PROSSER, TORTS § 15, at 91 (4th ed. 1971). Dahar's defense cannot be said to be so patently frivolous or irrelevant as to fall outside the class of protected statements. *Cf. Dineen v. Daughan*, 381 A.2d 663 (Me. 1978) (action for debt, motion challenging method used for attachment); *Hammer v. Forde*, 125 Minn. 146, 145 N.W. 810 (1914) (action to enjoin nuisance; allegation that city improperly and maliciously leased land on which nuisance occurred).

■■ The plaintiff's final argument concerning the civil pleadings is that they should not be privileged because he was not a party to the civil action and therefore he was unable to protect himself against defamatory statements. We disagree. Whether the privilege attaches depends on the nature of the proceedings in which the statements were made; it makes no difference whether the person allegedly defamed was a participant in those proceedings. *See, e.g., Sinnett v. Albert*, 188 Neb. 176, 195 N.W.2d 506 (1972); *Abbott v. Nat'l Bank of Commerce*, 20 Wash. 552, 56 P. 376, *aff'd* 175 U.S. 409 (1899). We fail to see how the fact of being named as a party would enable a person to prevent publication of the adverse party's pleadings. Although the position of the allegedly defamed party might in some cases indicate a lack of pertinence to the action, in the present case McGranahan, although not technically named as a party, was the agent of the city of Manchester responsible for the allegedly wrongful granting of a tax abatement. McGranahan, therefore, was hardly a stranger to the proceedings. We hold that all statements contained in the civil pleadings in this matter are privileged and cannot be the basis for any action for defamation.

III. *Statements to police and prosecutor*

Plaintiff also seeks damages in defamation for statements the defendant made to members of the Manchester Police Department, the city solicitor, and city prosecutor, during the investigation that led to the plaintiff's arrest. It is not specified in the complaint whether the

defendant is alleged to have initiated those conversations by making a complaint, formal or informal, or merely to have cooperated in response to questioning from those investigating the incident. The question before us is whether statements made, as here, in the prearrest investigatory process were sufficiently connected with the subsequent judicial proceeding to be covered by the absolute privilege.

■ In an action for defamation, unlike an action for *malicious prosecution*, it is immaterial whether the statements led to the institution of criminal charges against the person accused of a crime; the harm would be deemed to stem from the accusations alone, even if they were not republished outside of the police station. In a case where no criminal charges result from the complaint or statements made, the harm suffered by the person thus accused is minimal. That potential harm to a person's reputation is far outweighed by the substantial interests of society in encouraging citizens to report suspected criminal activity to the appropriate legal authorities, and to cooperate fully in investigations. W. PROSSER, TORTS § 119, at 834 (4th ed. 1971); *see Vogel v. Gruaz*, 110 U.S. 311, 314–15 (1884).

A person who knowingly gives false information to a law enforcement officer concerning suspected criminal activity may be subjected to criminal penalties, whether or not his statement was under oath. RSA 641:4. In those few cases where the report to the authorities is designed to pressure the accused person into settling another matter, or for purposes other than that of bringing suspected offenders to justice, an injured party may have available a remedy for *abuse of process*.

The plaintiff urges that we follow an early precedent in this jurisdiction indicating that "an action for slander may be maintained for maliciously and without reasonable or probable cause, charging a party with a felony before a magistrate." *Hill v. Miles*, 9 N.H. 9, 13 (1837).

Since that time, however, the doctrine in that case, allowing an inquiry into good faith, has been repudiated because of the risk that honest litigants will be put to trouble, time, and expense in defending themselves against vexatious lawsuits. *See* Veeder, *Absolute Immunity in Defamation: Judicial Proceedings*, 9 COLUM. L. REV. 463, 600–01 (1909). We think that *Hill v. Miles*, 9 N.H. 9 (1837), if brought today, would properly be framed as an action for *abuse of process* rather than defamation. *See Darnell v. Davis*, 190 Va. 701, 58 S.E.2d 68 (1950).

■ If, on the other hand, the complaint leads to criminal charges, the person thus accused may be able to bring an action for *malicious prosecution* rather than defamation. The two actions are quite separate; unlike a plaintiff in a defamation action, a plaintiff alleging malicious prosecution can prevail only upon proof that the defendant was instrumental in initiating the criminal charges; that the plaintiff was acquitted or otherwise successful on the merits; that the defendant acted with malice, that is, with a purpose other than bringing a suspected offender to justice; and that the defendant lacked probable cause to believe that the plaintiff had committed acts constituting a crime. *See* W. PROSSER, TORTS § 119 (4th ed. 1971). These additional requirements are designed to prevent most of the intimidation and interference to the judicial system that suits in defamation would cause. W. PROSSER, TORTS § 119, at 834 (4th ed. 1971). The two actions are complementary; where an action for malicious prosecution will lie, there is no need for the additional remedy in defamation. *See* Harper, *Malicious Prosecution, False Imprisonment and Defamation*, 15 TEX. L. REV. 157 (1937).

■ The law does not, and should not, allow recovery in tort by all persons accused of crimes and not convicted. There is no guarantee in our society that only guilty persons will be accused and arrested. *Baker v. McCollan*, 99 S. Ct. 2689, 2695 (1979). Except in extreme cases, for which malicious prosecution or abuse of process are adequate remedies, a person wrongfully accused of a crime must bear that risk, lest those who suspect wrongful activity be intimidated from speaking about it to the proper authorities for fear of becoming embroiled themselves in the hazards of interminable litigation. *See* L. GREEN, JUDGE AND JURY 338 (1930); Harper, *Malicious Prosecution, False Imprisonment and Defamation*, 15 TEX. L. REV. 157, 168 (1937).

■ ■ We think the investigation alleged in the complaint was sufficiently connected to the criminal proceeding itself to be included within the privilege. *Cf. Ritchey v. Maksin*, 71 Ill. 2d 470, 376 N.E.2d 991 (1978) (complaint from State department of agriculture); *Vasquez v. Courtney*, 276 Ore. 1053, 557 P.2d 672 (1976) (presentencing investigation). For this reason, we adopt the rule that treats both formal and informal complaints and statements to a prosecuting authority as part of the initial steps in a judicial proceeding, and as such entitled to absolute immunity from an action for defamation. W. PROSSER, TORTS § 114, at 781 (4th ed. 1971). The same absolute immunity or privilege applies to statements made to the city or county attorney or those investigating a suspected crime. *Vogel v. Gruaz*, 110

U.S. 311 (1884); *Bergman v. Hupy*, 64 Wis. 2d 747, 221 N.W.2d 898 (1974).

IV. *Statements made during trial of State v. McGranahan*

It is well settled that statements made in open court by a witness testifying under oath are included within the absolute privilege, provided they are pertinent to the proceeding. *See, e.g., Pagoto v. Hancock*, 41 Mich. App. 622, 200 N.W.2d 777 (1972); *Aborn v. Lipson*, 357 Mass. 71, 256 N.E.2d 442 (1970). Nearly a century ago, we affirmed the need for such a rule: "Public policy, and the safe administration of justice, require that witnesses, who are a necessary part of the judicial machinery, be privileged against any restraint, except that imposed by the penalty for perjury." *Stevens v. Rowe*, 59 N.H. 578, 579 (1880); *see Palmer v. City of Concord*, 48 N.H. 211, 217 (1868); 50 AM. JUR. 2d *Libel & Slander* § 249 (1970); Annot., 31 A.L.R.3d 1423, 1425 (1970).

In this case there is no serious contention that Dahar's testimony was not relevant to the criminal trial in which it occurred. In fact, the basis of McGranahan's complaint is that it was Dahar's testimony, and that alone, which was responsible for the entire proceeding. Under these circumstances, we hold that Dahar is immune from suit for defamation stemming from his testimony.

V. *Reports in the public press*

In his writ the plaintiff apparently seeks to hold the defendant liable for "repeated publications in the public press" of the criminal charges brought against him. He does not contend that the press reports were inaccurate, or that the defendant issued press releases or did any other act other than those already discussed above. This case is therefore distinguishable from *Hutchinson v. Proxmire*, 99 S. Ct. 2675 (1979), in which the defendant had issued broad statements to the press and his constituents going far beyond mere reports of speeches made on the floor of the United States Senate.

The newspapers that might have carried reports of McGranahan's arrest, trial, and ultimate acquittal had full access to the trial and to the complaint, which was a public record, and could not be held liable for accurately reporting that information. *Smith v. Daily Mail Publ. Co.*, 99 S. Ct. 2667 (1979); *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975). We have already held that the defendant had an absolute privilege to report suspected criminal activity to the police and to testify on the State's behalf at the trial. We hardly see how he can be held liable for legitimate secondary reports of the arrest and prosecution.

## VI. *Malicious use of process*

The plaintiff's writ includes a count captioned "malicious use of process." The plaintiff's initial complaint in this case, consisting of 126 lines and approximately 1,500 words, incorporated in one count claims for "trespass, libel, slander and malicious use of process." Upon the defendant's motion, the trial court ordered the plaintiff to amend his writ setting forth each cause of action in a separate count. *See Porter v. Dziura*, 104 N.H. 89, 90, 179 A.2d 281, 282 (1962); RSA 514:8. In response, the plaintiff filed a three-count writ identical in all particulars to the original, except that the entire 126 lines were repeated three times, each bearing a separate caption. Even at this stage of the proceedings, it is with difficulty that this court determines the theories on which the plaintiff seeks recovery. We do not, in any event, understand any of the plaintiff's counts as grounded in malicious prosecution based on the criminal charges that were brought against him, and make no determination of whether such an action would lie.

McGranahan contends, apparently referring to the pleadings Dahar filed in the *American Snacks* civil action, that "this malicious use of process constituted malicious defamation by libel." In some circumstances, a suit may be maintained for wrongful use of civil proceedings or abuse of process. *See* W. PROSSER, TORTS §§ 119–121 (4th ed. 1971). The facts alleged by the plaintiff and apparent on the record do not, however, support such a cause of action.

First, a plaintiff in an action for wrongful civil proceeding must show that the prior suit was entered into for an improper purpose. McGranahan has alleged, first, that Dahar filed the allegedly defamatory pleadings "for the ulterior purpose of creating a plausible defense to the suit by American Snacks." It hardly bears saying that defending oneself against a suit filed by another is a proper motivation for filing an answer or counterclaim. In addition, McGranahan has also alleged that the civil pleadings were "intentionally placed upon the public record" and "deliberately calculated to come to the attention of the public authorities of the City of Manchester." The inference is that Dahar included the allegedly defamatory statements in his civil pleadings deliberately as a way of bringing his suspicions regarding McGranahan's alleged activities to the attention of the criminal prosecutors. It strains the imagination that a person wishing to bring the misconduct of a public official to the attention of the city prosecutor would choose to proceed by a veiled accusation buried in a civil pleading, rather than by going directly to the police or other authorities. *Accord, Spira v. Superior Court*, 62 Cal. App. 3d 33, 36 n.3, 133 Cal. Rptr. 24, 26 n.3 (1976).

In this case, the plaintiff's action cannot be maintained even if an improper purpose can be shown. The plaintiff in an action for wrongful civil proceedings must allege and prove that the defendant instituted a civil action against the plaintiff. RESTATEMENT (SECOND) OF TORTS § 681A(a) (1977); L. GREEN, JUDGE AND JURY 337 (1930). The question whether a particular civil suit can be the basis for an action is one of law for the court. L. GREEN, *supra* at 340–41. The record before us shows that the only parties to the civil action in question were American Snacks, Inc., and the city of Manchester. McGranahan's personal liberty and property were not affected by the civil actions, nor was he put to any expense or inconvenience in defending the civil claims. The mere fact that he was mentioned in the civil action does not give him a sufficient interest to bring an action for wrongful civil process. *See* F. HARPER & F. JAMES, THE LAW OF TORTS § 4.8, at 326 (1956).

In addition, in order to maintain an action for wrongful civil proceeding, the plaintiff must show that the civil action terminated in his favor. *Robinson v. Fimbel Door Co.*, 113 N.H. 348, 306 A.2d 768 (1973); RESTATEMENT (SECOND) OF TORTS § 681A(b) (1977); F. HARPER & F. JAMES, THE LAW OF TORTS § 4.8, at 328 (1956). The court records reveal that the cases involving American Snacks and the city of Manchester were settled, with docket markings "judgment for neither party, no costs, no interest, no further action for same cause by agreement filed." Even assuming that McGranahan's interests coincided with those of his principal, the city of Manchester, the settlement reached in the civil actions is not sufficiently conclusive to constitute termination in favor of McGranahan or of the city. L. GREEN, JUDGE AND JURY 348 (1930).

We conclude that the plaintiff's complaint fails to state a cause of action in defamation or for wrongful civil proceedings, and must be dismissed.

*Exceptions sustained.*

All concurred.