Hillsborough-southern judicial district
No. 96-135

ARTHUR PROVENCHER

v.

BUZZELL-PLOURDE ASSOCIATES *& a.*

June 11, 1998

*William H. Kelley, P.A.*, of Manchester (*Roy W. Tilsley, Jr.* on the brief and orally), for the plaintiff.

*Law Office of Rodney L. Stark, P.A.*, of Manchester (*Michael D. Hatem* on the brief and orally), for defendants Thompson Appraisal Company, Inc. and Leon E. Martineau, Jr.

*Barto and Puffer, P.A.*, of Concord, for defendants Buzzell-Plourde Associates and Leland E. Buzzell, joins in the brief of

defendants Thompson Appraisal Company, Inc. and Leon E. Martineau, Jr.

HORTON, J. The plaintiff, Arthur Provencher, appeals an order of the Superior Court (*Hampsey,* J.) granting the defendants' motions to dismiss. The superior court ruled that the doctrine of absolute witness immunity extends to the defendants' pre-litigation appraisals of the plaintiff's property. We affirm.

The plaintiff owned approximately 165 acres of land in Hudson, commonly known as Benson's Wild Animal Farm. On March 20, 1992, the plaintiff and the State negotiated a purchase and sale agreement (agreement) for the property. The department of transportation wished to purchase the property for a proposed highway project. Under the agreement, the State was entitled to take the property by eminent domain if the parties were unable to negotiate a mutually acceptable purchase price. *See* RSA 498-A:4 (1997). The plaintiff also agreed not to challenge the taking, and the State agreed that its eminent domain offer would not be less than the offer required by the purchase and sale agreement.

Pursuant to the agreement, the State contracted with defendants, Buzzell-Plourde Associates and Thompson Appraisal Company, Inc., to appraise the plaintiff's property. The defendants independently appraised the property at a market value of slightly more than $1,000,000. After the plaintiff refused to accept the State's offer, which was consistent with the defendants' appraisals, the State commenced an eminent domain proceeding. *See* RSA 498-A:4.

At the condemnation proceedings, the defendants testified as expert witnesses for the State regarding the value of the plaintiff's property. The defendants' testimony was consistent with their original appraisals. The plaintiff, on the other hand, presented expert testimony alleging that the value of the property exceeded $7,000,000. The jury ultimately determined that the property was worth approximately $4,000,000.

The plaintiff subsequently brought an action against the defendants alleging that they breached various duties owed to him as an intended third party beneficiary to the contracts they entered into with the State. The plaintiff claimed that the defendants gave inaccurate appraisals while testifying at the eminent domain proceeding. The plaintiff's writ included allegations of negligence, negligent misrepresentation, fraud, breach of contract, and negligent infliction of emotional distress. The defendants moved to dismiss on the basis of witness immunity, arguing that their expert testimony provided them with immunity for their pre-litigation appraisals.

The plaintiff objected on the grounds that the defendants' alleged misconduct actually caused the eminent domain proceeding and thus could not insulate their pre-litigation appraisals from liability. Moreover, the plaintiff maintained that the defendants performed the appraisals as part of the agreement and not in preparation for the subsequent eminent domain proceeding.

The superior court granted the defendants' motions to dismiss. The court noted that the doctrine of absolute witness immunity applies to pre-litigation communications if actual litigation was contemplated at the time the communications were made and if they were relevant or pertinent to the proposed litigation. The court found that the defendants were entitled to absolute immunity because the parties contemplated litigation, *i.e.*, an eminent domain proceeding, at the time the defendants conducted the pre-litigation appraisals and the appraisals were relevant to that proceeding.

On appeal, the plaintiff contends that the court erred in that: (1) it failed to hold a hearing on the motions to dismiss as required by Superior Court Rule 58 (Rule 58); and (2) because the defendants' alleged acts occurred prior to, and actually caused, the eminent domain proceeding, their pre-litigation appraisals are not privileged.

■ We first address the plaintiff's Rule 58 argument. We review the superior court's decision not to hold a hearing for an abuse of discretion. *See Thomas v. Finger*, 141 N.H. 134, 137, 679 A.2d 567, 568 (1996).

Rule 58 provides:

> In civil or equity actions, *unless a party requests oral argument or an evidentiary hearing on any motion* filed by the party or on any objection thereto by another party within ten (10) days after the filing of the motion, *setting forth by memorandum, brief statement or written offer of proof the reasons why the oral argument or evidentiary hearing will further assist the court in determining the pending issue(s), no oral argument or evidentiary hearing will be scheduled* and the court may act on the motion on the basis of the pleadings and record before it. Failure to object shall not, in and of itself, be grounds for granting the motion.
>
> Upon request of counsel, motions to dismiss shall be heard as soon as practicable, and no later than thirty (30) days prior to the date scheduled for trial on the merits,

unless the presiding judge shall otherwise order in the exercise of his discretion. All counsel shall be prepared, at any such hearing, to present all necessary evidence.

(Emphasis added.) Rule 58 requires a party who requests an evidentiary hearing to set forth the reasons why a hearing will further assist the court in determining whether to grant a particular motion. *See State v. Roy*, 138 N.H. 97, 98, 635 A.2d 486, 486-87 (1993). We have emphasized that Rule 58 "clearly implies that the superior court . . . has discretion to deny a requested oral argument or evidentiary hearing if the proffered reasons for holding such a hearing are insufficient." *Id.*, 635 A.2d at 487.

■ Here, the plaintiff did not meet the requirements of Rule 58. Instead, he simply requested a hearing without setting forth the reasons why such a hearing would assist the superior court in determining whether to grant the defendants' motions to dismiss. The plaintiff failed to submit any memorandum, brief statement, or offer of proof to demonstrate what facts or additional information he would have presented at the hearing if he was given the opportunity. Accordingly, we conclude that the superior court did not abuse its discretion in failing to conduct a hearing in this matter. *Cf. id.* (affirming superior court's denial of defendant's petition for sentence suspension without holding an evidentiary hearing).

■ Moreover, we reject the plaintiff's argument that the second paragraph of Rule 58 specifically mandates that motions to dismiss *must* be heard upon request of counsel despite the requirements set forth in the first paragraph of the rule. Rather, the second paragraph must be read in conjunction with the first paragraph as setting forth the time frame regarding when motions to dismiss shall be heard, provided that the requesting party first complies with the requirements set forth in the first paragraph of the rule. *See* SUPER. CT. R. 58. Because the plaintiff failed to aver any reasons regarding the necessity of an evidentiary hearing, the superior court properly denied his request for such a hearing.

We next address the plaintiff's argument that the court erred in granting the defendants' motions to dismiss on the basis of witness immunity. The plaintiff contends that the defendants' communications are not privileged because the defendants performed the appraisals prior to the initiation of the underlying litigation.

■ Generally, in ruling upon a motion to dismiss, the trial court must determine whether the allegations contained in the plaintiff's pleadings sufficiently establish a basis upon which relief may be

granted. *Ossipee Auto Parts v. Ossipee Planning Board*, 134 N.H. 401, 403, 593 A.2d 241, 242 (1991). In making this determination, the court would normally accept all facts pled by the plaintiff as true, viewed in the light most favorable to the plaintiff. *Id.* When, however, the motion to dismiss does not challenge the sufficiency of the plaintiff's legal claim but, instead, raises certain defenses, the "trial court must look beyond the plaintiff's unsubstantiated allegations and determine, based on the facts, whether the plaintiff has sufficiently demonstrated his right to claim relief." *Id.* at 403-04, 593 A.2d at 242 (setting forth standard of review on a motion to dismiss for lack of standing); *cf. Kibby v. Anthony Industries, Inc.*, 123 N.H. 272, 274, 459 A.2d 292, 293-94 (1983) (noting that on a motion to dismiss for lack of personal jurisdiction, the plaintiff has burden of establishing sufficient facts to show that he has met the requirements of personal jurisdiction). We conclude that witness immunity is one such defense.

It is well-settled in New Hampshire that "certain communications are absolutely privileged and therefore immune from civil suit." *Pickering v. Frink*, 123 N.H. 326, 328, 461 A.2d 117, 119 (1983); *see McGranahan v. Dahar*, 119 N.H. 758, 762-63, 408 A.2d 121, 124 (1979). Statements made in the course of judicial proceedings constitute one class of communications that is privileged from liability in civil actions if the statements are pertinent or relevant to the proceedings. *See Pickering*, 123 N.H. at 329, 461 A.2d at 119; *McGranahan*, 119 N.H. at 763, 408 A.2d at 124; *cf. Supry v. Bolduc*, 112 N.H. 274, 276, 293 A.2d 767, 769 (1972) (determining statements made during a public hearing were not absolutely privileged because the hearing did not have all the hallmarks of a judicial proceeding). "A statement is presumed relevant unless the person allegedly [injured] demonstrates that it was so palpably irrelevant to the subject matter of the controversy that no reasonable man can doubt its irrelevancy or impropriety." *McGranahan*, 119 N.H. at 766, 408 A.2d at 126 (quotation omitted).

The purpose of this privilege is to encourage witnesses to testify and to ensure that their testimony is not altered or distorted by the fear of potential liability. *See Pickering*, 123 N.H. at 329, 461 A.2d at 119; *see also Briscoe v. LaHue*, 460 U.S. 325, 333 (1983) (noting that absolute immunity allows a witness to give candid and objective testimony without fear of a subsequent lawsuit). Because application of this privilege bars a plaintiff from recovery, it "must be reserved for those situations where the public interest is so vital and apparent that it mandates complete freedom of expression

without inquiry into a defendant's motives." *McGranahan*, 119 N.H. at 762, 408 A.2d at 124 (quotation omitted).

Many courts extend the doctrine of absolute privilege to communications between witnesses, litigants, and attorneys that occur subsequent to or contemporaneous with the initiation of litigation, but prior to the actual trial. *See, e.g., McLean v. International Harvester Co.*, 817 F.2d 1214, 1220 (5th Cir. 1987); *Bruce v. Byrne-Stevens & Associates Eng.*, 776 P.2d 666, 673 (Wash. 1989). The extension of this privilege recognizes that "an expert's courtroom testimony is the last act in a long, complex process of evaluation and consultation with the litigant." *Bruce*, 776 P.2d at 672. As the superior court pointed out, it is difficult to distinguish an expert witness's testimony from the acts and communications upon which it is based. In *Bruce v. Byrne-Stevens & Associates Engineers, Inc.*, the court emphasized:

> The privilege or immunity is not limited to what a person may say under oath while on the witness stand. It extends to statements or communications in connection with a judicial proceeding . . . . If this were not so, every expert who acts as a consultant for a client with reference to proposed or actual litigation, and thereafter appears as an expert witness, would be liable to suit at the hands of his client's adversary on the theory that while the expert's testimony was privileged, his preliminary conferences with and reports to his client were not, and could form the basis of a suit for tortious interference.

*Id.* at 672-73 (quotation omitted).

While we have previously applied absolute witness immunity to statements made during litigation, the issue of whether this doctrine extends to communications that occur prior to the initiation of judicial proceedings is one of first impression for this court. Although courts are divided on this issue, the RESTATEMENT (SECOND) OF TORTS suggests that the absolute witness privilege applies to certain communications that occur prior to the commencement of the underlying litigation. RESTATEMENT (SECOND) OF TORTS § 588 comment e (1977); *see General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1126-27 (6th Cir. 1990). Section 588 states that "[a] witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."

RESTATEMENT (SECOND) OF TORTS § 588 (1977). Comment e to section 588 provides:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is *actually contemplated in good faith and under serious consideration* by the witness or a possible party to the proceeding. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*Id.* § 588 comment e (emphasis added).

We join those courts which have concluded that pertinent pre-litigation communications between a witness and a litigant or attorney are absolutely privileged from civil liability if litigation was contemplated in good faith and under serious consideration by the witness, counsel, or possible party to the proceeding at the time of the communication. *See, e.g., General Elec. Co.*, 916 F.2d at 1127; *Walker v. Majors*, 496 So. 2d 726, 729-30 (Ala. 1986); *Darragh v. Superior Court County of Maricopa*, 900 P.2d 1215, 1218-19 (Ariz. Ct. App. 1995); RESTATEMENT (SECOND) OF TORTS § 588 comment e. *But see Raybestos Products Co. v. Younger*, 54 F.3d 1234, 1245-46 (7th Cir. 1995); *Twelker v. Shannon & Wilson, Inc.*, 564 P.2d 1131, 1134 (Wash. 1977). Immunity for expert witnesses "extends not only to their testimony, but also to acts and communications which occur in connection with the preparation of that testimony." *Bruce*, 776 P.2d at 673.

In the present case, the State hired the defendants to appraise the plaintiff's property pursuant to the agreement between the plaintiff and the State. Although the State had not initiated the eminent domain proceedings at the time the defendants completed their appraisals, it is clear that the parties seriously contemplated litigation as evidenced by the language of the agreement and the Eminent Domain Procedure Act. *See* RSA ch. 498-A. The agreement specifically stated that if the parties could not agree on a purchase price, then the State shall initiate an eminent domain proceeding to acquire the property and determine the purchase price in accordance with RSA chapter 498-A. In addition, the plaintiff conceded in his amended complaint and in his brief that the agreement specifically provided that eminent domain proceedings would be commenced if voluntary negotiations between the parties failed.

Moreover, under the Eminent Domain Procedure Act, the State must first attempt to voluntarily purchase the seller's property before acquiring it by eminent domain. RSA 498-A:4, I, II. RSA 498-A:4 explicitly authorizes the State to commence eminent domain proceedings if the parties cannot voluntarily agree on a purchase price. Before the State makes an offer, it must obtain an appraisal of the property from at least one qualified, impartial appraiser. RSA 498-A:4, I(a). This appraisal often serves as the basis for the initial offer. RSA 498-A:4, II(a)(4). If the seller ultimately rejects the State's offer, the State is permitted to commence condemnation proceedings. RSA 498-A:4, III(c).

■ Thus, the defendants completed their initial appraisals of the plaintiff's property while an eminent domain proceeding was actually contemplated. The Eminent Domain Procedure Act and the agreement between the parties specifically state that litigation will be commenced if the parties fail to mutually agree on a purchase price. *See* RSA 498-A:4, II(a)(5). Moreover, the State relied upon the defendants' appraisals in determining its initial purchase offer to the plaintiff and in commencing the condemnation action. Accordingly, we hold that the doctrine of absolute witness immunity applies to the defendants' pre-litigation appraisals because an eminent domain proceeding was contemplated at the time of the initial appraisals and such appraisals were relevant to that proceeding. *See Darragh*, 900 P.2d at 1218-19.

■ Furthermore, we agree with the trial court's reasoning that extending the absolute privilege to pre-trial communications in this case would further the goals of encouraging "free and unfettered testimony" during judicial proceedings. As the trial court pointed out, the testimony of an expert witness at trial is often based partly upon extended consultations between attorney, witness, and litigant. Subjecting a party's witnesses to liability for their pre-litigation statements in cases of this nature would undoubtedly have a perverse effect on the initiation and presentation of cases. The absolute witness immunity doctrine "reflects a determination that the potential harm to an individual is far outweighed by the need to encourage participants in litigation, parties, attorneys, and witnesses, to speak freely in the course of judicial proceedings." *McGranahan*, 119 N.H. at 763, 408 A.2d at 124. Moreover, an eminent domain proceeding allows both parties to test the credibility of expert witnesses through cross-examination and provides adequate safeguards against perjury and abuse.

Finally, the plaintiff maintains that the defendants are not entitled to witness immunity on the counts alleging that the defendants conspired to commit fraudulent acts against him and intentionally deflate the value of his property. The plaintiff essentially argues that allegations of conspiracy focus on the defendants' acts relative to the alleged conspiracy, rather than on the defendants' statements relative to their pre-litigation appraisals, and thus do not fall under the privilege. The plaintiff conceded at oral argument, however, that he failed to advance this claim before the trial court. Accordingly, we need not review the merits of this argument because it was not raised below and is, therefore, waived. *See Quirk v. Town of New Boston*, 140 N.H. 124, 128, 663 A.2d 1328, 1331 (1995).

We have reviewed the record with respect to the plaintiff's remaining arguments and find them to be without merit, warranting no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322, 627 A.2d 595, 596 (1993).

*Affirmed.*

BRODERICK, J., did not sit; the others concurred.