Martin v. Applied Cellular          CV-99-2114     03/21/01
                UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


John H. Martin, Jr.

     v.                                Civil No. 99-214-JD
                                       Opinion No. 2001 DNH 055
Applied Cellular Technology, Inc.


                           O R D E R


     The plaintiff, John Martin, brought this action against his

former employer, Applied Cellular Technology ("ACT"), and ACT

brought counterclaims.  ACT moves for summary judgment (document

no. 29) on Martin's claims of wrongful civil action, malicious

prosecution, breach of contract, and violation of New Hampshire's

statutory wage law.[1]  Martin objects to summary judgment.


                       Standard of Review

     Summary judgment is appropriate when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  "[A]n issue is 'genuine' if the evidence presented is

_____

     [1]Two of Martin's claims were dismissed previously.  See
Order, Sept. 21, 1999.

such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999).

The court takes the record evidence in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). The court must consider the record as a whole, and may not make credibility determinations or weigh the evidence. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2110 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. at 2110-11 (internal quotation omitted).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In response to a properly supported motion for summary judgment, the nonmoving party bears the burden to show a genuine issue for trial by presenting significant material evidence in support of

2

the claim.  See Tardie v. Rehab. Hosp., 168 F.3d 538, 541 (1st Cir. 1999).  Summary judgment will not be granted as long as a reasonable jury could return a verdict in favor of the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Background

Beginning in 1996, Martin served as vice president and chief operating officer of Tech Tools, Inc., a software development company that was a wholly owned subsidiary of ACT.  In early 1997, Martin and ACT's management discussed the possible purchase of Tech Tools by Martin.  A draft agreement was drawn up between Martin and ACT, but was not executed.  In the draft agreement, Martin was described as a stockholder and officer of Impact Technology, Inc.  Martin formed Impact Technology in March of 1997 in order to facilitate his purchase of Tech Tools.

On May 27, 1997, ACT broke off negotiations with Martin for the purchase of Tech Tools and terminated Martin's employment after Tech Tools's bookkeeper, Karen Clement, alerted ACT's management to several recent expenses that had been authorized by Martin.  ACT contacted the Nashua Police Department on May 29, 1997, and reported that Martin had stolen funds from Tech Tools.  ACT's president, Garrett Sullivan, met with Nashua Police

Detective Richard Widener and informed him of the bases for ACT's accusations against Martin.

First, Sullivan reported, Martin had given himself an unauthorized raise in salary in excess of $1,000.00. Second, invoices showed that a customer had paid Impact Technology for technical support on a Tech Tools product when the payment should have gone to Tech Tools. Third, invoices showed that Martin had transferred Tech Tools funds to Execute Technologies, a company with which Sullivan was unfamiliar, for the purchase and installation of computer equipment. Some of the invoiced equipment could not be accounted for within Tech Tools, and the equipment that was installed had been installed by Martin. Fourth, two checks made payable to Calligraphy Creations for bulk mailing services appeared to be overcharges, and Calligraphy Creations was owned by Karen Martin, the plaintiff's ex-wife.

Sullivan provided the police with documentation, including returned checks and invoices. He informed the detectives that he wished to initiate a criminal prosecution against Martin. Both ACT and the Nashua Police Department proceeded to investigate the questioned expenses and Martin's involvement.

Widener interviewed Karen Clement, the bookkeeper who initially noticed the questioned expenses. Clement showed Widener Tech Tools's payroll records, which she claimed showed an

4

unauthorized pay raise issued to Martin amounting to $1,076.92.

Clement also provided Widener with documents showing that the American Red Cross paid Impact Technology $2,800.00 for technical training related to software it had purchased from Tech Tools. Clement told Widener that any payment for training should have been deposited in Tech Tools's account. Widener confirmed that Martin had endorsed and deposited the check in Impact Technology's bank account, and that Impact Technology's account listed the same address as Tech Tools's account.

Detective Widener investigated Execute Technologies, the company that received checks signed by Martin on Tech Tools's account for computer equipment and installation. Widener learned that Execute Technologies had been co-founded by Martin, and suspected that Martin had created the invoice for Execute Technologies.

Widener also investigated two payments authorized by Martin to Calligraphy Creations, the company owned by Martin's ex-wife, Karen Martin. ACT had reported that the amounts seemed high in comparison to previous payments for similar bulk mailing services. Widener found that each of the two invoices from Calligraphy Creations billed for 50,000 mailers when other records indicated that only 35,000 were sent on each occasion. Furthermore, one of the invoices appeared to bill Tech Tools for

5

layout and design of a mailer that Tech Tools had already created. Widener attempted to interview Karen Martin but was unable to do so. In September of 1997, Karen Martin was subpoenaed to appear before a Hillsborough County Grand Jury to testify concerning her former husband, Impact Technology, and Execute Technologies. Karen Martin invoked her Fifth Amendment privilege not to testify before the Grand Jury.

In February of 1998, Tech Tools commenced a civil action for conversion against Martin in state court. In April of 1998, an arrest warrant and complaint were executed charging James Martin with theft by unauthorized taking. Martin was subsequently arrested and charged. The civil action was terminated by voluntary nonsuit in July of 1998, and the criminal charges were nol prossed in March of 1999. Martin filed the instant suit against ACT in May of 1999.

## Discussion

In his objection to ACT's motion for summary judgment, Martin argues that the court should deny the motion pursuant to Federal Rule of Civil Procedure 56(f) because he has not been able to obtain full discovery yet. To avail itself of Rule 56(f), a party must submit an affidavit explaining the specific information it expects to obtain that would be essential to its

6

opposition to summary judgment, and the reason it has not been able to obtain this discovery.  See Fed. R. Civ. P. 56(f); Mattoon v. City of Pittsfield, 980 F.2d 1, 7 (1st Cir. 1992). Martin has not submitted such an affidavit.  Furthermore, once the party opposing summary judgment presents an argument based on the merits, it cannot fall back on a Rule 56(f) argument.  See Rodriquez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 23 (1st Cir. 1999).  Therefore, the court denies Martin's Rule 56(f) request and proceeds to consider the parties' arguments on the merits.

I.   Wrongful Civil Action/Malicious Prosecution

ACT contends that it is entitled to summary judgment for Martin's claims for wrongful civil action and malicious prosecution because Martin cannot prove that it lacked probable cause to commence a civil suit against Martin for conversion or to initiate a criminal investigation.  Martin argues that ACT lacked probable cause, and contends that ACT maliciously provided false information to, and withheld material information from, the Nashua Police Department.

To prove a claim of malicious prosecution of a civil action or criminal proceedings, a plaintiff must show that the defendant acted without probable cause to believe that the plaintiff was

7

civilly liable or guilty of a crime. See ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993); McGranahan v. Dahar, 119 N.H. 758, 769 (1979); Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973). While the determination of facts relevant to the existence of probable cause is left to a factfinder, the existence of probable cause is ultimately a question of law to be decided by the court. See MacRae v. Brant, 108 N.H. 177, 180 (1967).

A party has probable cause to initiate civil or criminal proceedings if it has knowledge of facts that would lead a person "of ordinary caution and prudence to believe or entertain an honest and strong suspicion" that the accused has committed a civil wrong or a crime. Id. Once probable cause exists, the accuser is not obligated to investigate further for verification. See Franco-de Jerez v. Burgos, 876 F.2d 1038, 1042 (1st Cir. 1989).

Proof that the defendant acted maliciously is one element of a malicious prosecution claim but is independent of the probable cause analysis. "If the defendant had such information as would reasonably lead him to believe that the accused had committed a crime, it is immaterial that the defendant may have been actuated by malice or by motives that were less than noble in bringing the charge." Stock v. Byers, 120 N.H. 844, 848 (1980).

Martin argues that factual questions exist concerning what

8

ACT knew about the circumstances surrounding his conduct, and that these factual questions preclude summary judgment on the counts of malicious prosecution. First, Martin asserts that Karen Clement lacked significant personal knowledge about the transactions she reported to ACT management. This assertion does not change the facts reported by ACT to the Nashua police, nor does it create an inference that ACT knew any of those facts to be false.

Second, Martin argues that Sullivan failed to inform Detective Widener that ACT had been negotiating the sale of Tech Tools to Martin. This assertion does not elucidate ACT's knowledge of facts related to probable cause. To the extent this contention could raise a question about ACT's motive for initiating a criminal investigation or filing a lawsuit, its motive is not relevant to the question of whether it had probable cause to institute criminal or civil proceedings. See id.

Third, Martin claims Sullivan misled the police when he failed to explain that Impact Technology was intended to be involved in the purchase of Tech Tools. However, Widener's report of his initial meeting with Sullivan and Clement indicates that he was informed that Impact Technology "was the name Martin was going to use if he had purchased the company." Def. Ex. B. Even if ACT did not inform the police of Impact's role in the

9

sale negotiations, again, this is not a relevant fact for the purpose of determining whether ACT had probable cause to suspect Martin of mishandling company funds. Even if ACT knew that Martin was planning to use Impact to purchase Tech Tools, it is unclear why this knowledge should diminish any suspicion raised by payments to Impact from Tech Tools's customers.

Fourth, Martin contends that ACT knew his salary raise was authorized. He argues that because ACT controlled Tech Tools's operations and supplied its operating funds, ACT could not have considered Martin's pay raise to be unauthorized. Martin does not clearly explain this argument. If he means that ACT implicitly authorized the pay raise by providing the funds for it, he has not pointed to evidence contradicting ACT's claim that the funds were not provided for that purpose. If he means that he had the authority, as vice president of Tech Tools, to authorize his own pay raise, he has not shown that he had this authority.

Though Martin does not argue this point in his objection, he states in his affidavit that Dick Sullivan, ACT's board chairman, approved a salary raise pending completion of the acquisition of Tech Tools by Martin. However, he does not present evidence that Sullivan's approval was sufficient corporate authorization. In any case, even if ACT did have knowledge that Martin's salary

10

increase was authorized by Sullivan, the facts concerning the other questioned transactions established probable cause to believe Martin had otherwise acted illegally.

"The law does not, and should not, allow recovery in tort by all persons accused of crimes and not convicted. There is no guarantee in our society that only guilty persons will be accused and arrested." McGranahan, 119 N.H. at 769. Whether ACT was ultimately correct in its suspicions about Martin's conduct is not at issue here. ACT has demonstrated that it had knowledge of sufficient facts at the time it initiated criminal proceedings, and at the time it filed a civil suit against Martin, to have probable cause to believe Martin had acted illegally while employed at Tech Tools. Martin has not raised an issue of material fact concerning the existence of probable cause. Accordingly, ACT is entitled to summary judgment on Counts One and Two.

II.   Breach of Contract and Statutory Wage Claim

These claims arise out of Martin's allegations that while working for Tech Tools, he developed a product called "Spirit Saver," a wine bottle stopper, under the direction of ACT management. Martin alleges that two directors of ACT, Dick Sullivan and Angela Sullivan, promised him ten percent of any

11

profits realized from the product.  From November of 1995 until the termination of his employment in May of 1997, Martin developed the Spirit Saver product and arranged for its manufacture and marketing.  Martin alleges that ACT failed to pay him the promised share of profits despite having sold over 100,000 units.

ACT claims that Martin's breach of contract claim and statutory wage claim are barred by New Hampshire's statute of frauds because the alleged contract for a share of profits was oral and was not performed within one year.  See New Hampshire Revised Statutes Annotated ("RSA") 506:2 (1997); McIntire v. Woodall, 140 N.H. 228, 231 (1995).  Martin acknowledges that the contract was not written and was not performed within one year.  He contends that, because he alleges ACT wrongfully accused him of illegal transactions in part to deprive him of Spirit Saver revenues, ACT's own fraudulent conduct should not receive protection from the statute of frauds.

The cases cited by Martin, creating an exception to the statute of frauds where "'operating facts, such as fraud, part performance or other equitable considerations'" exist, involve land sale contracts.  Tsiatsios v. Tsiatsios, 140 N.H. 173, 176 (1995) (quoting Weale v. Mass. Gen. Hous. Corp., 117 N.H. 428, 431 (1977)).  Even if the court were to apply such an exception

12

in a case involving a promise to share profits, the type of fraud contemplated occurs when a party does not intend to fulfill the terms of the contract at the time it enters into the contract. See Morgan v. Morgan, 94 N.H. 116, 118 (1946). Martin has not pointed to sufficient evidence that ACT intended not to pay Martin when its directors promised him a share of the Spirit Saver profits in November of 1995. Consequently, any action based on the alleged oral agreement concerning Spirit Saver profits is barred by RSA 506:2. ACT is entitled to summary judgment for Counts Five and Six.

## Conclusion

The defendant's motion for summary judgment (document no. 29) is granted. The only claims remaining in the case are the defendant's counterclaims. At this point in time the parties should undertake good faith efforts to resolve the remaining claims.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 21, 2001

cc:  Francis L. Cramer III, Esquire
     George R. Moore, Esquire

13