**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2018-0342, <u>In the Matter of Rebecca Binder and Paul Binder, Jr.</u>, the court on February 28, 2019, issued the following order:**

Having considered briefs filed by the defendant, Paul Binder, Jr. (father), and the plaintiff, Rebecca Binder (mother), and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The father appeals a May 2018 order of the Circuit Court (<u>Leonard</u>, J.) denying his motion to "enforce" a July 2014 child-support order. We affirm.

The father and the mother share two children, a daughter born in 2005 and a son born in 2007. As of January 2012, the father's total child support obligation was $208 per week, which included $49 per week to pay an arrearage.

In May 2013, the mother filed a petition to modify the father's child support obligation alleging that the father should pay more because, in addition to base pay, he also earned overtime and commissions. The father argued that the court should not include his commissions as income for child support purposes, but that, instead, it should order him to provide the mother with a percentage of each commission upon his receipt of same. The trial court agreed with the father and, in a November 2013 order, required him to pay, in addition to child support based upon his regular pay, "32.79% of any commissions, bonuses or other irregular income within 7 days of his receipt of same." Neither party appealed the trial court's November 2013 order.

In May 2014, the parties again appeared before the court on the mother's motion for contempt in which she alleged that the father had not paid her the percentage of commissions directly. In a July 2014 order, the trial court required that "[a]ll future payments of 32.79% net of any commissions, bonuses or other irregular income shall be paid to [the mother] within seven days of receipt by [the father]."

In March 2018, the trial court held a hearing at which both parties were present (the father with counsel, the mother self-represented) on the father's petition to modify child support and the mother's motion for contempt. A transcript of that hearing has not been provided as part of the appellate record. As a result of that hearing, the trial court found that "the father's base monthly income, on which he shall pay 'base' child support, is $5,844," and that his "'base' child support obligation is $1,297 per month or $300 per week." The

court ordered the father to pay "additional child support of 29.66% of the net of his 'Personal Leave,' 'Sunday worked Premium,' 'Commissions,' and 'Taxable Award (gift cards)' within 7 days of receiving that income." The effective date of the modifications to the father's child support obligation was April 12, 2017, the presumed date of service of the father's petition to modify child support.

The father filed a motion to reconsider or clarify the trial court's March 2018 order in which he argued, in relevant part:

> The Court's order overlooked the issue of overpayment that was raised by the [father] during trial. The July 2014 order that last modified child support in this case provides[,] "All future payments of 32.79% net of any commissions, bonuses or other irregular income shall be paid . . . to [the mother] within seven days of receipt by [the father]." [The father] testified through representations of counsel that since July 2014 he has paid 32.79% of his gross commissions, bonuses, and other irregular income not the net amount ordered. [The father] submitted to this Court every commission statement he has received since August 2014 along with a chart summarizing the amount he paid on his gross, the amount he should have paid on his net, and the amount of his overpayment. The exhibits were accepted in evidence without any objection by [the mother].
>
> . . . Fairness dictates that this overpayment must be addressed and credited to the [father] against future payments of child support. Between August 2014 and April 12, 2017, the date of service, [the father] paid $28,413.02 to [the mother] on his gross commissions, when he should have paid $17,857.40 on his net commissions. This overpayment of $10,555.62 must be credited to [the father]. The Court has the relevant evidence to address this issue.

The trial court specifically denied this part of the father's motion. The father did not appeal that denial to this court.

In May 2018, in a new motion to "enforce" the trial court's July 2014 child support order, the father made the same argument and sought similar relief. The mother objected to the father's May 2018 motion to "enforce," observing that this was the third time he had requested the same relief, and arguing that although the father had paid a percentage of his gross commissions to the mother, he had not paid her any of the irregular income he earns from taxable rewards, bonuses, and overtime. The trial court denied the father's motion for the reasons stated in the mother's objection. This appeal followed.

On appeal, the father asserts that he is entitled to restitution because the mother "was unjustly enriched when she passively accepted the benefit of additional and tax-free child support payments" and because "[i]t is unconscionable for her to retain that benefit." He requests that we either reverse the trial court's denial of his motion to "enforce" and grant him a credit for the $10,555.62 he overpaid "or remand the issue . . . for a further hearing."

"Restitution is an equitable remedy typically applied to contracts implied by law to disgorge the benefit of unjust enrichment." In the Matter of Haller & Mills, 150 N.H. 427, 430 (2003). For the purpose of this appeal, we assume without deciding that restitution may be ordered in a child support case. "To be entitled to restitution, there must not only be unjust enrichment, but also the person sought to be charged must have wrongly secured a benefit or passively received one which it would be unconscionable to retain." Id. (quotation and brackets omitted). Unless unsupported by the record, we generally defer to the trial court's determination as to whether the facts and equities in a particular case warrant such a remedy. Pella Windows and Doors v. Faraci, 133 N.H. 585, 586 (1990). We review the trial court's decision to grant or deny restitution under our unsustainable exercise of discretion standard. See Axenics, Inc. v. Turner Constr. Co., 164 N.H. 659, 669 (2013).

According to the father's pleadings, he first raised the issue of the overpayment at the March 2018 hearing. Although the father has not provided a transcript of that hearing, in his motion to reconsider/clarify the trial court's order issued after that hearing, he stated that he "testified through representations of counsel that since July 2014 he has paid 32.79% of his gross commissions, bonuses, and other irregular income not the net amount ordered," and that he "submitted . . . every commission statement he has received since August 2014 along with a chart summarizing the amount he paid on his gross, the amount he should have paid on his net, and the amount of his overpayment." According to the father, the trial court accepted those exhibits in evidence.

The father again raised the overpayment issue in his motion to reconsider/clarify the trial court's March 2018 order. Although he did not use the terms "unjust enrichment" or "restitution," he argued in that motion that "[f]airness dictates that th[e] overpayment must be addressed" and that he should receive a credit against future child support payments. The trial court denied that relief when it denied his motion, and the father did not appeal the trial court's denial. Given this procedural history, we cannot conclude that the trial court unsustainably exercised its discretion by denying the father's May 2018 motion to "enforce" or by failing to schedule an additional hearing on the overpayment issue. See Provencher v. Buzzell-Plourde Assoc., 142 N.H. 848, 851 (1998) (noting that we review trial court's "decision not to hold a hearing for an abuse of discretion"); see also State v. Lambert, 147 N.H. 295, 296

3

(2001) (explaining that we refer to abuse of discretion standard as the unsustainable exercise of discretion standard).

Affirmed.

Lynn, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Eileen Fox,**
**Clerk**