RICHARD SEELIG *vs.* HARVARD COOPERATIVE SOCIETY.

Middlesex.  January 7, 1969. — April 4, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, SPIEGEL, & REARDON, JJ.

*Malicious Prosecution.  Probable Cause.  Libel and Slander.  Agency,* What constitutes, Police officer, Agent's knowledge. *Evidence,* Admissions and confessions, Relevancy and materiality, Competency. *Constitutional Law,* Admissions and confessions. *Corporation,* Officers and agents. *Larceny.*

In an action for malicious prosecution against a retail store by a former manager of its camera department, there was no error in a denial of the defendant's motion for a directed verdict where evidence warranted findings that the defendant was responsible for the actions of a police officer whom it periodically employed as a store detective and who initiated larceny complaints against the plaintiff on which he was acquitted, that the detective and the defendant's assistant general manager, who was instrumental in bringing the complaints, had no probable cause to bring them, and that therefore they acted with malice.  [536–537]

Written defamatory statements will not support an action for slander. [538]

Defamatory statements made in the course of a judicial proceeding, if pertinent thereto, are absolutely privileged.  [538]

There was no error in a denial of a motion for a directed verdict for the defendant in an action for slander against a retail store by a former employee thereof where evidence warranted findings that there was no probable cause for conditionally privileged slanderous statements about the plaintiff made by an agent of the defendant during the course of an investigation of the plaintiff for the defendant and that the statements were uttered with malice.  [538]

At the trial of an action for malicious prosecution and slander against a retail store by a former employee thereof, there was prejudicial error, entitling the defendant to a new trial, in the exclusion of an inculpatory

statement typed, read and signed by the plaintiff in the absence of counsel while at a police station after he had been arrested and before commencement of criminal proceedings against him, in which he was acquitted, where it did not appear that the statement was coerced or involuntary and it was corroborative of evidence of probable cause for the criminal proceedings and tended to prove the truth of the alleged slander. [540]

The exclusionary rules announced in *Escobedo* v. *Illinois,* 378 U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, do not apply to a civil proceeding between private parties. [540]

At the trial of an action for malicious prosecution and slander against a corporation operating a retail store by a former employee discharged by the defendant prior to an arrest of the plaintiff on a charge of larceny and initiation of criminal proceedings therefor by the defendant's store detective, in which the plaintiff was acquitted, there was no error in refusing to strike testimony by the plaintiff that following his arrest the principal of his children's school told·him that his children "were upset by talk that was going around," since the testimony was admissible to prove that the principal's statement was made and concern of the plaintiff about the effect of his arrest upon his children was relevant on the issue of damages [540]; evidence offered by the defendant of the reason for the plaintiff's discharge and of his employment history was admissible on the issues of malice and damages [540–541]; there was no error in the exclusion of a letter regarding the plaintiff's poor financial condition received by the defendant, since, even though there was a reply to the letter by the defendant, there was no evidence that any of the defendant's employees involved in the investigation and prosecution of the plaintiff had knowledge of the letter [541–542]; and there was no error in the exclusion of a sales slip allegedly showing criminal intent on the part of the plaintiff, since there was no evidence that such employees knew of the slip, although the detective had the information contained therein from another source [542].

At the trial of an action for malicious prosecution against a retail store whose assistant general manager was instrumental in bringing criminal proceedings against the plaintiff ending in an acquittal, a conversation between the assistant general manager and one of the defendant's sales clerks which ultimately resulted in the initiation of the proceedings by the defendant's store detective was admissible, although hearsay, to show that the assistant general manager had probable cause to initiate the proceedings, even if the detective had no knowledge of the conversation. [542]

At the trial of an action for malicious prosecution against a retail store by a former manager of its camera department who was acquitted on complaints for larceny of photographic equipment brought by an agent of the defendant, it was entitled to an instruction in effect that even if the plaintiff originally had the defendant's permission to have such equipment in his possession, he was guilty of larceny if he later formed an intent to keep it. [543]

TORT. Writ in the Superior Court dated October 22, 1964. The action was tried before *Barron, J.*

*David W. Woods* for the defendant.

*Arthur T. Winters* for the plaintiff.

SPIEGEL, J. The declaration in this action of tort contained three counts, one for malicious prosecution, another for slander, and the third for libel. The count for libel was waived. The jury returned a verdict for the plaintiff in the amount of $15,000 on the count for slander and a verdict for the plaintiff in the amount of $18,000 on the count for malicious prosecution.[1] The case is here on the defendant's exceptions to the exclusion of certain evidence, to the admission of certain evidence, to the denial of a motion for a directed verdict on each count, to the denial of certain requested instructions, to the giving of an additional instruction to the jury after they had retired to deliberate, and to the denial of its motion for a new trial on the count for slander.

We state the evidence most favorable to the plaintiff. The defendant operates a retail store in Cambridge, Massachusetts, for the sale of various articles of merchandise. In April, 1963, it hired the plaintiff to manage its camera department. While the plaintiff was an employee of the defendant, it was the defendant's policy to allow employees in the camera department to take camera equipment from the store in order to become familiar with the operation of the equipment. Whenever an employee did so, a record on a 3 x 5 card was required to be made and the card placed in a file. When the equipment was returned the card was destroyed. On May 16, 1964, the defendant's assistant general manager discharged the plaintiff.

One Leo Davenport, a police officer of the city of Cambridge, on his "days off" was employed by the defendant as a "store detective." On July 3, 1964, the assistant general manager spoke to Davenport. As a result of this conversation, Davenport conferred with the buyer for the camera department. On July 7, 1964, after visiting the de-

---

[1] By amendment the count for slander was numbered count 1 and the count for malicious prosecution was numbered count 2.

fendant's store, Davenport and another member of the
Cambridge police department talked with one Grime, a cus-
tomer of the defendant's store, at Grime's place of employ-
ment. Davenport asked Grime how long he had known
the plaintiff, if he "knew . . . [the plaintiff] had been
taken, as far as charges were concerned, for some property
which had been taken," if he knew "anything about a
camera, a strobe light, and a light meter" and if he had
"ever . . . carried out of the store packages containing
things which . . . [he] did not know was inside, given to
. . . [him] by . . . [the plaintiff]." Davenport told Grime
that "an article had been charged to . . . [Grime's account
at the defendant's store]." Grime and the two officers
went to Grime's residence where Grime gave the officers
certain photographic equipment. They then went to the
police station where Grime made a written statement, the
pertinent parts of which are set forth in the margin.[2]

Davenport returned to the defendant's store and talked with
the buyer for the camera department, the assistant general
manager and another employee of the camera department.
He then obtained a search warrant for the plaintiff's resi-
dence in North Reading. Subsequently Davenport, another
officer from Cambridge and two members of the North
Reading police department searched the plaintiff's residence.
They found photographic equipment which the plaintiff ad-
mitted was the property of the defendant. The plaintiff
and the equipment were then taken to the Cambridge police
station. The assistant general manager, the buyer and the
other employee of the camera department were at the sta-

---

[2] "Regarding my friendship with . . . [the plaintiff] whom I have known
for a time from late September 1963, when I became friendly with him over a
period of time. As a result of our friendship I had occasion to take from . . .
[the defendant's store] various bundles of unknown goods, in excess of fifteen
which I later turned over to him at my home upon his arrival there. . . .

"At one time . . . [the plaintiff] said that some articles had come and
that the person to whom they belonged didn't pick them up, so could he use
my name and . . . [account] number to write these articles off the books,
as sold.

". . . I . . . have a camera, Argus, which was given to me by . . . [the
plaintiff] at some time, plus light meter Weston and strobe light.

"I voluntarily turned these articles, which I had, to Sgt. Davenport . . . ."

tion.  The plaintiff was detained overnight.  The following morning, after the plaintiff signed a written statement, Davenport signed criminal complaints charging the plaintiff with larceny.  On September 15, 1964, "a trial was held" and the plaintiff was found not guilty.  At no time did any person connected with the defendant ask the plaintiff to return the photographic equipment.  At no time did any of the defendant's employees tell Davenport not to initiate proceedings against the plaintiff.

1.  The defendant contends that its motion for a directed verdict on the count for malicious prosecution should have been granted.  It argues that Davenport was acting as a police officer when he initiated the criminal proceedings against the plaintiff and that the defendant did not ratify his actions.  It also argues that because of certain "uncontroverted evidence" the question whether the defendant had probable cause was one of law which should have been resolved in its favor.

The general rule is that "where the [police] officer is acting in the performance of his public duties . . . or where the defendant does no more than narrate the material facts to the officer and leave him to decide what he will do . . . the defendant is not liable for the action of the officer." *Kidder* v. *Whitney*, 336 Mass. 307, 308–309.  The defendant is not responsible where the officer acts "entirely upon his own judgment and responsibility as a public officer." *Burnham* v. *Collateral Loan Co.* 179 Mass. 268, 274.  But where by any means it is shown that the officer is not expected to exercise his "judgment and responsibility as a public officer" the defendant is responsible for the officer's subsequent acts.  *Mason* v. *Jacot*, 235 Mass. 521.

There was no evidence in the instant case that Davenport was in the employ of the defendant on the days that he conducted his investigation and initiated the criminal proceedings against the plaintiff.  There was evidence, however, that Davenport was employed by the defendant one day a week on a regular basis and had been so employed for a number of years.  Throughout his investigation Davenport

had frequent conversations with the defendant's assistant general manager. The assistant general manager, having initiated the train of events which eventually resulted in the criminal complaints against the plaintiff, never told Davenport not to initiate the proceedings. While the jury could have found on these facts that Davenport acted solely as a police officer, it could also have concluded that the defendant was responsible for Davenport's actions. See *Hirst* v. *Fitchburg & Leominster St. Ry.* 196 Mass. 353.

Regarding the question of probable cause, the jury was not required to believe the defendant's "uncontroverted evidence." See *Lenn* v. *Riché* 331 Mass. 104, 111. There was evidence that the assistant general manager and Davenport knew that the plaintiff had taken the photographic equipment pursuant to the defendant's policy which permitted him to do so. There was also evidence that the defendant never asked the plaintiff to return the equipment. The jury could have inferred from this evidence that the assistant general manager and Davenport did not have reason to believe that the plaintiff had formed an intention not to return it. The jury could also have found that the assistant general manager and Davenport did not believe the statements made by Grime. The question of probable cause was properly before the jury. Having determined that the assistant general manager and Davenport acted without probable cause, the jury could have inferred that they acted with malice. *Pihl* v. *Morris,* 319 Mass. 577, 580. There was no error in the judge's denial of the defendant's motion for a directed verdict on the count for malicious prosecution.

2. The plaintiff introduced evidence of the following allegedly slanderous statements: "Davenport . . . signed a search warrant . . . and two larceny complaints . . . knowing such are public records and that they would be published in the local papers . . . . They were repeated with audiences present at three different hearings and at the trial of this case . . . . They were repeated in the presence of . . . [a member of the Cambridge police department,

two individuals, and members of the North Reading police department] in the presence of the plaintiff's wife and his three children . . . to one Grime . . . and several employees of the defendant at the Cambridge Police Department."

Any defamatory statements contained in the search warrant and the criminal complaints were necessarily written and the plaintiff, having waived the count for libel, cannot rely on them to support the jury's finding on the count for slander. The statements made in the course of the judicial proceedings were pertinent and are, therefore, absolutely privileged. *Laing* v. *Mitten*, 185 Mass. 233, 235. *Mezullo* v. *Maletz*, 331 Mass. 233, 236. The remaining statements alleged to be slanderous were statements made by Davenport during the course of his investigation.

The defendant again contends that it is not responsible for Davenport's actions during his investigation. See *supra.* The defendant also argues that the statements were conditionally privileged and there was no evidence that they were uttered with malice. We do not agree. ·Although the statements were conditionally privileged, "the plaintiff has the right, notwithstanding the privileged character of the communication, to go to the jury, if there be evidence tending to show actual malice." *Dale* v. *Harris*, 109 Mass. 193, 196. Where the jury finds that the defendant did not have probable cause when it caused the statements to be uttered, the jury may infer that they were uttered with malice. *Retailers Commercial Agency, Inc., petitioner*, 342 Mass. 515, 520–521. There was no error in the denial of the defendant's motion for a directed verdict on the count for slander.

3. The defendant excepted to the exclusion from evidence of the typewritten statement made by the plaintiff on July 8, 1964, before the criminal complaints were signed. Although the plaintiff does not argue the question in his brief he argued at the trial that the statement was inadmissible because it was obtained in violation of his constitutional rights as set forth by the Supreme Court of the United States in the case of *Escobedo* v. *Illinois*, 378 U. S. 478.

We summarize the evidence with regard to the statement.[3] In the late afternoon or early evening of July 7, 1964, the plaintiff was taken to the Cambridge police station. Upon arrival he was given something to eat. The photographic equipment taken from his home was placed on a table and he separated it into two "piles," one containing that which was the property of the defendant and the other containing that which was his. He was informed that he was under arrest, was permitted to make a telephone call to his father, and was placed in a cell for the night. There was no evidence that he was subjected to any interrogation on July 7, 1964.

The following morning he was interviewed by the officer who had accompanied Davenport the day before. He was informed of the nature and seriousness of the charges against him and of the possible penalty should he be convicted. He was informed that he would be taken to court that day and that an attorney would be there to represent him. The plaintiff then typed a statement, the pertinent parts of which are set forth in the margin.[4] The plaintiff was not threatened or promised anything. There was no evidence of physical abuse or prolonged interrogation on July 8, 1964. Although the plaintiff claimed that he had only typed what the officer told him to type, the officer testified that he only instructed the plaintiff as to what matters should be covered by the statement. The plaintiff read the statement and then signed it.

---

[3] The judge, subsequent to the exclusion of the statement, held a voir dire in regard thereto at which testimony was heard in addition to the testimony at the trial.

[4] "I Richard N. Seelig . . . ordered a Rollie Mutar lens set. I took one of the lenses home without permission . . . . Upon my termination I did not return said lens. The value of this Rollie Mutar lens is $264.00. I ordered this lens . . . under the name of Bill Grime . . . . I intended to keep this for my own use.

"Last May Bill Grime came into the store and I gave him an Argus camera . . . , a Metz Strobe . . . and a Weston light meter . . . . I gave this to him without permission of the Management or other employees of the Harvard Coop. Both articles are the property of the Harvard Coop. Upon my Termination I did not make any effort to return the above articles.

"Upon other occasions I have taken other photo equipment with and without permission "

We do not think that the statement was involuntarily made or coerced. It is not "inherently untrustworthy." It corroborated the statement made by Grime and the testimony of the defendant's employees with regard to the question of probable cause. It also tended to prove the truth of the allegedly slanderous statements. That the statement might be inadmissible in a criminal proceeding against the plaintiff because it might have been obtained in violation of the rules established by the Supreme Court of the United States in the cases of *Escobedo* v. *Illinois*, 378 U. S. 478, and *Miranda* v. *Arizona*, 384 U. S. 436, is not relevant. The exclusionary rules announced in those cases are applicable only to criminal proceedings. *Escobedo* v. *Illinois, supra,* 491. *Miranda* v. *Arizona, supra,* 444. We do not intend to extend these rules to a civil proceeding between private parties. As the statement was relevant to the questions whether the assistant general manager and Davenport had probable cause and whether the allegedly slanderous statements were true, its exclusion was prejudicial error.

4. As the defendant is entitled to a new trial we are considering only such of the remaining exceptions as are likely to occur at another trial.

The judge allowed de bene testimony by the plaintiff to the effect that following his arrest he was called to his children's school and informed by the principal that his children "were upset by talk that was going around." The defendant argues that the testimony was a "mixture of hearsay and opinion evidence" and should have been struck from the record on the defendant's motion. We do not agree. While the testimony was not admissible to prove the truth of what the plaintiff was told by the principal, it was admissible to prove that it had been said. See *Commonwealth* v. *Monahan,* 349 Mass. 139, 167–168. That the plaintiff had reason to be concerned about how his arrest had affected the lives of his children was relevant on the question of damages.

The judge did not allow the defendant to establish the

reason for the plaintiff's discharge or the plaintiff's prior employment history. The plaintiff had introduced evidence to the effect that his discharge was the result of ill feelings between himself and the defendant's assistant general manager and that following the plaintiff's arrest he had difficulty finding employment. We think that the defendant was entitled to attempt to prove that the plaintiff's discharge was not the result of malice and that his inability to find work was not the result of his having been arrested. Evidence that the plaintiff was discharged because he was not properly performing his duties and that he had had employment difficulties in the recent past would counter the plaintiff's allegation of malice and might result in a mitigation of damages.

The judge also excluded from evidence a letter received by the defendant regarding the plaintiff's poor financial condition. The defendant argues that it was admissible "to confirm evidence of his dishonesty" and that the existence of a reply by the defendant to the letter proves that it had knowledge of the letter when it caused the criminal proceedings to be instituted against the plaintiff. There was no evidence that any of the defendant's employees who were involved in the investigation and prosecution or Davenport had knowledge of the letter. Probable cause is a state of mind. A corporation has no mind. While it can be responsible for the tortious acts that require the existence or absence of a certain state of mind if those acts are committed by an employee, the requisite state of mind must necessarily be that of the employee. In effect, then, the defendant argues that because a corporation is presumed to have knowledge of information communicated to one of its employees, all the employees are presumed to have knowledge of that information. We do not agree. Probable cause is "such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe, or entertain an honest and strong suspicion, that the person arrested is guilty." *Bacon* v. *Towne*, 4 Cush. 217, 238–239. It is the person's "honest and reasonable

belief, not the actual state of things," which governs. *Higgins* v. *Pratt*, 316 Mass. 700, 709. The application of a doctrine of "constructive" knowledge would in effect permit the corporate defendant to act without probable cause and justify its action by the "actual state of things." It was not error to exclude the letter.

The judge also excluded from evidence a copy of a sales order for one of the items found at the plaintiff's residence. The sales order has on it the notation: "Sold order, William Grime, Coop. #74791." The defendant argues that the sales slip corroborates the written statement given by Grime and is therefore "evidence of a criminal intent at the time of the taking." It argues that Davenport had "this information . . . prior to the prosecution." There was no evidence that either Davenport or the assistant general manager knew of the sales slip. The fact that Davenport had the information contained in the sales slip from another source does not render the sales slip admissible. In order to be admissible the person who is required to have had probable cause must have had actual knowledge of the sales slip itself. As the defendant did not offer the sales slip to establish the truth of the allegedly slanderous statement, it was not error for the judge to exclude it.

The judge also excluded from evidence the assistant general manager's account of a conversation he had with a sales clerk which ultimately resulted in the initiation of the criminal proceedings against the plaintiff. The defendant argues that the evidence was admissible to show that there was "an understandable and logical reason for the initiation of the investigation." Hearsay evidence is admissible to show the existence of probable cause. Although there was no evidence that Davenport had knowledge of the conversation, the testimony was admissible to show that the assistant general manager had probable cause when Davenport initiated the criminal proceedings against the plaintiff.

Finally, the judge refused to give the jury two additional instructions requested by the defendant. The judge in-

structed the jury that "larceny is the stealing of the personal property of another. It may also consist of obtaining another's property with intent to defraud by false pretenses." General Laws, c. 266, § 30, as amended through St. 1945, c. 282, § 2, provides in pertinent part that "whoever unlawfully, and with intent to steal or embezzle, converts . . . the property of another . . . whether such property is or is not in his possession at the time of such conversion . . . shall be guilty of larceny." "Demand and refusal are never necessary, except as furnishing evidence of an unlawful taking or detention against the rights of the true owner . . . . When the circumstances, without these, are sufficient to prove such taking or detention, they are superfluous." *Edmunds* v. *Hill*, 133 Mass. 445, 446–447. *Lawyers Mortgage Inv. Corp. of Boston* v. *Paramount Laundries Inc.* 287 Mass. 357, 361. The defendant was entitled to an instruction to the effect that even if the plaintiff originally had the defendant's permission to have possession of the photographic equipment, if he later formed an intent to keep it he was guilty of larceny. The defendant was also entitled to an instruction on conditional privilege on the count for slander. See *Brow* v. *Hathaway*, 13 Allen, 239, 242; *Dale* v. *Harris*, 109 Mass. 193, 196.

*Exceptions sustained.*