## ANTHONY DEAR *vs.* JOHN DEVANEY & others.[1]

No. 12-P-721.

Suffolk. December 5, 2012. -- February 14, 2013.

Present: KAFKER, MILKEY, & AGNES, JJ.

*Public Entertainment. License. Privileged Communication. Libel and Slander. Unlawful Interference. Alcoholic Liquors,* Entertainment, License. *Evidence,* Privileged communication, Police report. *Police. State Police.*

Discussion of the standard of review applicable to a grant of summary judgment. [290]

In a civil action arising from statements made by the defendant police officers in their report of their investigation of an entertainment license violation, the judge erred in granting summary judgment in favor of the defendants on a claim of defamation, where the officers' statements were not protected by an absolute privilege, in that they were made during the investigation rather than the prosecution of license suspension proceedings, and in that they were made by police officers rather than lawyers or prosecutors; and where material disputed facts existed concerning whether the statements were false and defamatory and whether the defendants published them knowing them to be false or in reckless disregard of their truth or falsity. [290-294]

In a civil action arising from statements made by the defendant police officers in their report of their investigation of an entertainment license violation, the judge erred in granting summary judgment in favor of the defendants on a claim of intentional interference with advantageous relations, where material issues of disputed fact existed regarding whether the defendants' intentional interference with the plaintiff's relationship with certain nightclubs, which was terminated following the publication of the defendants' report, was improper in motive or means. [294-295]

CIVIL ACTION commenced in the Superior Court Department on August 29, 2007.

The case was heard by *Bonnie H. MacLeod-Mancuso,* J., on a motion for summary judgment.

*Timothy M. Burke* for the plaintiff.

*Douglas I. Louison* for the defendants.

---

[1]Kevin McGill and the city of Boston. The city of Boston was dismissed as a defendant for reasons not stated in the record and is not a party to this appeal.

KAFKER, J. The primary issue presented is whether defamatory statements made by police officers in their report of their investigation of an entertainment license violation are absolutely privileged. The officers were sued for defamation and intentional interference with advantageous relationships. The plaintiff, Anthony Dear, a State trooper, was accused of causing or contributing to licensing violations and other illegal activities related to his off-duty activities for an event production company. We conclude that the defendants' statements are protected by a qualified privilege and not an absolute privilege, and that summary judgment was improperly allowed as there are material issues of disputed fact regarding whether the defendants published the statements knowing the defamatory matter to be false or with reckless disregard of the truth.

*Background.* On Dear's appeal from the entry of summary judgment against him, we summarize the evidence in the light most favorable to him. *Dragonas* v. *School Comm. of Melrose,* 64 Mass. App. Ct. 429, 430 (2005). Dear is employed as a State trooper. In the late 1990s, Dear sought and received permission to perform outside work as a disc jockey (DJ) in nightclubs in and around Boston. In 2006, Dear worked with a production company known as Elite Productions (Elite); through Elite, Dear worked in various nightclubs.

The defendants, Sergeant John Devaney and Sergeant Detective Kevin McGill, are Boston police officers whose primary duties are to inspect Boston nightclubs for safety violations. Devaney is McGill's supervisor. They act as agents of the Boston licensing board (licensing board), which issues and regulates restaurant and alcohol licenses, and the mayor's office of consumer affairs and licensing (MOCAL), which has jurisdiction over entertainment licenses.

On November 22, 2006, Dear attended a Thanksgiving eve party at an establishment called 33 Restaurant and Lounge (33). Although he had been scheduled to work as a DJ that evening, he did not; he was, however, present at 33. That evening the Boston fire department inspected 33 and issued an abatement order alleging that 33 was overcrowded. The abatement order did not mention Dear or Elite. On December 7, Devaney and McGill, who were not present at 33 on the evening of November

22, but who apparently checked Elite's Web site to learn that it had promoted an event at 33 on November 22, issued two licensed premises inspection notices arising out of the November 22 incident. Notice no. 041833 alleged that the "Premise allowed 'Elite Productions' to operate premise. 11-22-06. Mr. Anthony Dear — promoter, contributed to overcrowding, and patron safety affected."

In addition, Devaney and McGill wrote Boston police department incident report no. 060669544 (report), which contains most of the statements that form the basis of the defamation action.[2] The report states that Elite, "a nightclub promotion company owned by" Dear, sponsored the event on November 22, 2006. It went on to say that Elite, "operated by Mr. Dear[,] conducts events that are chronically a danger to the public safety of the patrons and employees inside the nightclubs where the events are held." The report stated further that Elite "has been the promotion company at licensed premises where the detectives have observed overcrowding, underage patrons consuming alcohol, assaults, disorder, fire code violations and over-served intoxicated patrons. The promotion company consistently violates the rules and regulations of the Boston Licensing Board, Mayor's Office of Consumer Affairs and Licensing and the Commonwealth Laws governing alcohol and entertainment." The report also stated that "Mr. Dear's presence at these nightclubs raises questions as to whether or not there is a business arrangement between the clubs and Mr. Dear that the Licensing Board has not been made aware of as is required by law. Mr. Dear has appeared at Boston Licensing Board hearings and has stated to Boston Police Officers that he was working in an undercover capacity which the officers found to be false."

Finally, the report recommended: "It is my belief that the Licensing Board should direct all licensed premises in the city that they should not use 'Elite Productions' and Mr. Dear to promote events at nightclubs without proper notification and adherence to all rules and regulation of the Licensing Board."[3]

The November 22 violation of overcrowding was investigated

---

[2] The report was prepared by McGill at the direction of, and based on information received from, Devaney.

[3] According to Dear, Devaney and McGill also made statements, not included

by MOCAL, resulting in a hearing. Dear was not a party or a witness at this proceeding, even though one of the license inspection violations referenced him. At the hearing, the owner of 33 stated that Elite was "not in control of the establishment on this or any other evening." Rather, 33 had a barter arrangement with Elite, allowing its employees to dine at 33 in return for marketing and DJ services. After the hearing, MOCAL suspended 33's entertainment license for one day for overcrowding. At least some of Devaney's and McGill's reports also came to the attention of the State police, which conducted an internal investigation that cleared Dear of any wrongdoing and accused Devaney of misusing his authority.

The summary judgment record includes the deposition testimony of Dear, Devaney, and McGill. Dear denied that he was the owner of Elite or that he was paid by Elite. Rather, he was one of Elite's marketed DJs. Dear also denied that he had any financial arrangements with the licensed establishments beyond acting as a DJ. He stated that he was present in the cited premises as a DJ or patron but not as a promoter. He also denied that he violated any rules or regulations of the licensing board or MOCAL, or that he had any control over the number of people being admitted to the various establishments. He also denied ever representing that he was acting in an undercover capacity as alleged in the report.

Devaney stated in his deposition that events promoted by Elite were cited numerous times for violations. He stated that he had relied on Elite's Web site, or Dear's presence at a nightclub, to make the connection between an Elite promotional event and the premises cited for overcrowding and other violations. McGill also stated that Elite had banners in the establishment when it was promoting an event. Both Devaney and Mc-

_____

in the report, to club owners and managers to the effect that Devaney and McGill "had a problem with Elite" and that club owners and managers should expect more scrutiny and pressure from them if the establishments continued to work with Dear and Elite. He also alleges that Devaney made a disparaging comment about Asians; Dear is Asian-American. At present, Dear has only supported these allegations with inadmissible hearsay, and we do not rely on them. See Mass.R.Civ.P. 56(e), 365 Mass. 824 (1974); *Davidson* v. *General Motors Corp.*, 57 Mass. App. Ct. 637, 639 (2003), quoting from *Madsen* v. *Erwin*, 395 Mass. 715, 721 (1985) ("factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment").

Gill claimed that Elite contributed to or caused the violations because Elite promoted the event. The officers did not investigate who was responsible for controlling admission into the premises. Devaney concluded that Dear himself was promoting certain of these events because he was featured on the Web site and present at the establishments when they were cited for violations. What actually appeared on the Web site was not included in the record. Devaney speculated that the promotion companies, including Elite, were getting paid by the establishments. He did not, however, check any of the establishments' financial records to verify this speculation, although he had the authority to do so. He stated that another officer, Lieutenant Val Williams, told him that Dear had said he was acting in an undercover capacity when he was seen at a nightclub at 180 Lincoln Street during an event that led to a citation and a hearing at MOCAL. There was nothing from Williams in the summary judgment record, and Devaney stated in his deposition that he did not follow up on this information.

The nightclubs at which Dear and Elite worked that received citations terminated their relationships with Dear and Elite. Dear last worked as a DJ in 2007.

The motion judge dismissed Dear's defamation and intentional interference with advantageous relationship claims on summary judgment.[4] The judge concluded that "statements made in Licensed Premise Inspection Notice No. 041833 and Boston Police Incident Report No. 060669544 may be considered absolutely privileged because they were used to institute quasi-judicial proceedings at both the Boston Licensing Board and the Mayor's Office on Consumer Affairs and Licensing." The judge also concluded that

> "[Dear's] claim that [Devaney and McGill] interfered with his employment with the Massachusetts State Police must fail because [Dear] has claimed no actual damages as a result of any alleged interference.
>
> "As for [Dear's] relations with various nightclubs, . . .

---

[4]Dear also asserted claims for various other intentional and negligent torts, which were likewise dismissed on summary judgment. Dear raises no arguments pertaining to those other claims here.

[Dear] cannot rely on the statements that form the basis of his defamation claim for which [Devaney and McGill] are entitled to summary judgment, and [Dear] does not allege with specificity any other statements made by [Devaney and McGill] that would support an inference that [they] knowingly induced the breaking of [Dear's] relationship with any nightclub."

*Discussion.* 1. *Summary judgment standard.* When summary judgment has been granted pursuant to Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002), we review de novo whether "there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Boazova* v. *Safety Ins. Co.*, 462 Mass. 346, 350 (2012). As the evidence must be construed favorably to the nonmoving party, "all doubt as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment." *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982), quoting from *Gross* v. *Southern Ry.*, 414 F.2d 292, 297 (5th Cir. 1969).

2. *Absolute or qualified privilege on defamation claim.* The first issue that we must decide is whether the statements made by Devaney and McGill in their report and license inspection notice are protected by an absolute or only a qualified privilege. "An absolute privilege provides a defendant with a complete defense to a defamation suit even if the defamatory statement is uttered maliciously or in bad faith." *Mulgrew* v. *Taunton*, 410 Mass. 631, 634 (1991). In contrast, a qualified or conditional privilege immunizes a defendant from liability unless the defendant publishes the defamatory matter knowing it to be false, or with reckless disregard as to its truth or falsity. See *ibid.* "The rule in Massachusetts has long been that absolute privilege is limited to comparatively few cases." *Vigoda* v. *Barton*, 348 Mass. 478, 484 (1965). See *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 385 (1978) (absolute privilege "is limited to cases in which public policy or the administration of justice requires complete immunity"). If the absolute privilege does apply, Devaney and McGill are entitled to judgment as a matter of law, regardless of any showing of malice. See *Visnick* v. *Caulfield*, 73 Mass. App. Ct. 809, 812-813 (2009).

At issue in the instant case is the scope of the absolute privilege accorded to judicial proceedings, and whether it extends to statements made by Devaney and McGill in their investigatory reports in the instant case. The privilege applies to "[s]tatements made in the course of a judicial proceeding which pertain to that proceeding." *Correllas* v. *Viveiros*, 410 Mass. 314, 319 (1991). At the core of the privilege are pertinent statements made by judges, lawyers, and witnesses at the judicial proceeding.[5] The privilege has also been extended to protect statements made in certain quasi judicial proceedings, at least where there are adequate procedures in place to test the validity of the statements presented, as there are at trial. *Fisher* v. *Lint*, 69 Mass. App. Ct. 360, 367 (2007) ("The availability of an absolute privilege . . . depends on whether the procedural safeguards during the . . . proceedings adequately minimize the risk that defamation or other tortious conduct will occur"). See Restatement (Second) of Torts § 585 comment c, § 588 comment d (1977). Cf. *Butz* v. *Economou*, 438 U.S. 478, 512 (1978) (stressing that assertions will be tested as witnesses are "subject to the rigors of cross-examination" and "the penalty of perjury").[6] Such quasi judicial proceedings have included licensing proceedings. See Prosser & Keeton, Torts § 114, at 818-819 (5th ed. 1984).

The privilege has also been further extended to statements "made in the context of a proposed judicial proceeding" but prior to the actual commencement of the judicial part of proceedings. *Correllas*, 410 Mass. at 321. See *Sriberg* v. *Raymond*, 370 Mass. 105, 109 (1976) ("Where a communication to a prospective defendant relates to a proceeding which is contemplated in good faith and which is under serious consideration, it is our view that the privilege should attach"); *Fisher, supra* at 366 ("The privilege extends to circumstances where the statements are made preliminary to a proposed or contemplated judicial proceeding"). That extension of the

---

[5]The word "pertinent" is "not to be construed narrowly." *Aborn* v. *Lipson*, 357 Mass. 71, 73 (1970). Devaney's and McGill's statements at the hearing are therefore protected by an absolute privilege.

[6]Witnesses testify under oath and are subject to cross-examination at hearings before MOCAL. Licensees may also present evidence. Dear, however, was neither a licensee nor otherwise a party to the proceeding.

absolute privilege has included pretrial materials prepared by prosecutors and other lawyers, as well as prospective litigants. See *Sriberg*, 370 Mass. at 108 (attorney's letter accusing plaintiff of misconduct and threatening legal action absolutely privileged); *Visnick*, 73 Mass. App. Ct. at 812 (extending absolute immunity to letter from former employee stating that she had decided to file discrimination charges with Equal Employment Opportunity Commission and Massachusetts Commission Against Discrimination as well as lawsuit).

An absolute privilege has also been extended to witness statements made to the police. See *Correllas, supra* at 320-321 ("statements made to police or prosecutors prior to trial are absolutely privileged if they are made in the context of a proposed judicial proceeding"). An absolute privilege has not, however, been extended to police officers' own investigatory reports.[7] See *Seelig* v. *Harvard Coop. Soc.*, 355 Mass. 532, 538 (1969) (statements by police officers in course of investigation conditionally privileged). Cf. *Malley* v. *Briggs*, 475 U.S. 335, 342-343 (1986) (describing police officers' activities as being "further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment" and therefore providing officers with only qualified immunity against 42 U.S.C. § 1983 claim); *Kalina* v. *Fletcher*, 522 U.S. 118, 126 (1997), quoting from *Buckley* v. *Fitzsimmons*, 509 U.S. 259, 273 (1993) ("There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial . . . and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested").

With these precedents and principles in mind, we conclude that the statements made here are not protected by an absolute privilege. They were made during the investigation, not the prosecution, of the license suspension proceedings. They were made by police officers, not lawyers or prosecutors. For the

---

[7] We need not, however, and do not, rule categorically on the privileged status of police investigatory reports in general. Our holding is more fact-specific. See *infra*. We further note that cases in other jurisdictions have mostly treated police reports under the rubric of a qualified privilege. See Annot., Immunity of Police or Other Law Enforcement Officer from Liability in Defamation Action, 100 A.L.R. 5th 341, 377-382 (2002).

most part, the report does not contain witness statements but the officers' own speculation or recounting of unidentified hearsay. They are also directed not at a party to the proceeding but at someone who is not even present at the proceeding. As he was neither a party nor a witness at the proceeding, Dear had no opportunity to test the validity of the statements at the proceeding. Also, there is nothing in the record to suggest that the licensing board or MOCAL contemplated any such proceeding against Dear or Elite at the time the report was prepared, or even afterwards, as neither Dear nor Elite was a licensee. Nor did Devaney or McGill contemplate such proceedings against Dear; although McGill's deposition testimony indicates that he believed he could have sought criminal charges against Dear, he did not do so. Instead, McGill stated that he was merely providing information to the licensing board so that it could determine whether further investigation was appropriate. See Restatement (Second) of Torts § 588 comment e ("The bare possibility that [a] proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered"). Cf. *Smith* v. *Suburban Restaurants, Inc.,* 374 Mass. 528, 531 (1978) (no absolute privilege where judicial proceeding was not being seriously considered, but was contingent on future developments). In sum, summary judgment cannot be allowed based on absolute privilege because an absolute privilege does not extend to statements made by police officers so far removed from any quasi judicial proceedings that would test the truth or falsity of such assertions.

Devaney and McGill contend that summary judgment was properly allowed even if they had only a qualified privilege. "Statements made by public officials while performing their official duties are conditionally privileged." *Mulgrew,* 410 Mass. at 635.[8] Based on the record before us, however, there are material disputed facts concerning whether the statements were false and defamatory and whether Devaney and McGill published them knowing them to be false or in reckless disregard of their truth or falsity. See *id.* at 636. The question whether Dear was a promoter rather than just a DJ for Elite was vigorously contested, as was his role as a patron or promoter on the nights in question

---

[8]Dear has not argued that a qualified privilege does not apply.

when various citations were issued. Similarly disputed is whether Elite caused or contributed to the licensing violations by the licensees and Dear's role in promoting such violations or hindering any investigation of the violations. Also unresolvable on this record is perhaps the most serious charge, whether Dear ever misrepresented that he was acting in an undercover capacity. The statements by Devaney and McGill, particularly in light of Dear's occupation as a State trooper, were capable of a defamatory meaning. See *Reilly* v. *Associated Press*, 59 Mass. App. Ct. 764, 778 (2003). As for whether Devaney and McGill acted recklessly or maliciously, given the seriousness of the charges, the investigation and the report were at best incomplete and speculative, and at worst reckless or malicious. Besides checking Elite's Web site and noticing Dear's presence, the officers did no follow-up investigation before publishing serious charges of wrongdoing. Also glaringly absent from the record is an affidavit or deposition testimony of Williams. On this record, summary judgment cannot therefore be allowed based on qualified privilege.

3. *Intentional interference with advantageous relations.* "To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." *Blackstone* v. *Cashman*, 448 Mass. 255, 260 (2007). See *Weber* v. *Community Teamwork, Inc.*, 434 Mass. 761, 781-782 (2001). Although Dear sought recovery for interference with both his relationship with the State police and his employment in the Boston nightclub industry, on appeal he challenges only the allowance of summary judgment on his claim related to interference with his advantageous relations with the nightclub industry.

We conclude that summary judgment should not have been allowed on this claim. The first, second, and fourth prongs are clearly satisfied here, construing the evidence in favor of Dear. Dear submitted sufficient evidence to establish an ongoing

relationship with various nightclubs, Devaney's and McGill's intentional interference with those relationships as demonstrated by their own statements and reports, and harm to Dear as proved by his testimony describing the termination of his DJ services by various clubs. The only significant issue is whether Devaney's and McGill's intentional interference "was improper in motive or means." *Blackstone, supra.* Whether the actor's motives or means are improper "depends on the attending circumstances, and must be evaluated on a case-by-case basis." *G.S. Enterprises, Inc.* v. *Falmouth Marine, Inc.,* 410 Mass. 262, 273 (1991). We conclude that there are material issues of disputed fact regarding both improper means and motives.

In dispute is whether Devaney and McGill knowingly or recklessly made false statements in their report and their conversations with nightclub owners regarding Dear's activities. Those statements, for the reasons discussed above, are not protected by absolute immunity and therefore could form the basis of an intentional interference with advantageous relations claim. They may establish interference with advantageous relations by improper means. See *Draghetti* v. *Chmielewski,* 416 Mass. 808, 817 (1994) ("Even if [police chief] could have accomplished the same result by proper means, he may not use the improper means of misrepresentation"). There are also material issues of disputed fact regarding whether Devaney and McGill had an improper motive — personal animus against Dear — in preparing their report and pressuring nightclub owners to discontinue his services. See *ibid.* (improper motive established if police chief acted "based on retaliation or ill will toward [plaintiff], rather than the good of the police department").[9]

*Conclusion.* Summary judgment was improperly allowed on Dear's claims of defamation and intentional interference with his advantageous relations with the nightclub industry, and those claims are remanded to the Superior Court for further proceedings.

*So ordered.*

---

[9]If he introduces admissible evidence of anti-Asian animus by Devaney and McGill, see note 3, *supra,* Dear could also proceed on a theory of racism as improper motive.